JS 44 (Rev. 07/16)

# CIVIL COVER SHEET

16·CV·6696

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
SHANTA BOWENS, ET AL.

**DEFENDANTS**
CITY OF PHILADELPHIA, ET AL.

16 6696

**(b)** County of Residence of First Listed Plaintiff  PHILADELPHIA
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant  PHILADELPHIA
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
ERIC SPADE
ONE SOUTH BROAD ST. SUITE 1830
PHILADELPHIA, PA 19107

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                    *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☒ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans | ☐ 345 Marine Product Liability | Liability | | ☐ 840 Trademark | ☐ 460 Deportation |
| (Excludes Veterans) | ☐ 350 Motor Vehicle | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 362 Personal Injury - Medical Malpractice | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☒ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity):*  42 USC § 1983
Brief description of cause:  CIVIL RIGHTS

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE  DIAMOND
DOCKET NUMBER  12-5690-PD

DATE  12/30/2016

SIGNATURE OF ATTORNEY OF RECORD  E.S.

**FOR OFFICE USE ONLY**

RECEIPT #     AMOUNT     APPLYING IFP     JUDGE     MAG. JUDGE

DEC 30 2016



# UNITED STATES DISTRICT COURT

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM** to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: *One South Broad St., Suite 1830, Philadelphia, PA 19107*

Address of Defendant: *1515 Arch St., 15TH Floor, Philadelphia, PA 19102*

Place of Accident, Incident or Transaction: *Philadelphia*
(Use Reverse Side For Additional Space)

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?
(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))    Yes☐  No☑

Does this case involve multidistrict litigation possibilities?    Yes☐  No☑

*RELATED CASE, IF ANY:*
Case Number: *12-5690-PD*  Judge *Diamond*   Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
   Yes☐  No☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
   Yes☑  No☐

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?
   Yes☐  No☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?
   Yes☐  No☑

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☒ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
    (Please specify) _____

B. *Diversity Jurisdiction Cases:*

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
   (Please specify) _____

## ARBITRATION CERTIFICATION
*(Check Appropriate Category)*

I, *Eric F Spade*, counsel of record do hereby certify:

☐ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☐ Relief other than monetary damages is sought.

DATE: *12/30/16* _____    _____    *90328*
                        Attorney-at-Law                    Attorney I.D.#

**NOTE:** A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: *12/30/16* _____    _____    *90328*
                        Attorney-at-Law                    Attorney I.D.#

CIV. 609 (5/2012)

DEC 30 2016



# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

SHANTA BOWENS, ET AL.

       v.

CITY OF PHILADEPHIA, ET AL.

CIVIL ACTION

**16   6696**

NO.

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

### SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.   ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
    and Human Services denying plaintiff Social Security Benefits.   ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
    exposure to asbestos.   ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
    commonly referred to as complex and that need special or intense management by
    the court. (See reverse side of this form for a detailed explanation of special
    management cases.)   (✗)

(f) Standard Management – Cases that do not fall into any one of the other tracks.

| 12/30/16 | ERIC F. SPADE | ⟨signature⟩ |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** PLAINTIFFS |
| 215 772 0600 | 215 772 0601 | ESPADE@GMAIL.COM |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

DEC 30 2016

PD

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| SHANTA BOWENS, and | : |
| MAUREEN TRAINA, and | : |
| ANDREW CARROLL, and | : |
| LARRY FRANCIS aka ABDUL JAMAL, and | : |
| REGINALD CARROLL, and | : |
| KELSEY BOSTON, and | : |
| WAYNE BOOKER, and | : |
| JACQUELINE KINGWOOD, and | : |
| SHELITA BRAXTON, and | : **CIVIL ACTION** |
| PAUL JACKSON, and | : **NO.** |
| RAHMEAK TAYLOR, and | : |
| JOSHUA MANNETO, | : |
| *Plaintiffs,* | : |
| | : **RELATED CASE: 12-5690-PD** |
| v. | : |
| CITY OF PHILADELPHIA, | : |
| Claims Unit, | : **TRIAL BY JURY DEMANDED** |
| 1515 Arch Street, 15th Floor, | : |
| Philadelphia, PA  19102, and, | : |
| | : |
| POLICE OFFICER | : |
| JEFFREY WALKER (BADGE NO. 3730), | : |
| Individually and as a former Police | : |
| Officer for the City of Philadelphia, and | : |

16    6696

|                                                    |   |
|----------------------------------------------------|---|
|                                                    | : |
| **POLICE OFFICER**                                 | : |
| **THOMAS LICIARDELLO (BADGE NO. 4383)**            | : |
| **Individually and as a former Police**            | : |
| **Officer for the City of Philadelphia, and**      | : |
|                                                    | : |
| **POLICE OFFICER**                                 | : |
| **BRIAN REYNOLDS (BADGE NO. 4268)**                | : |
| **Individually and as a former Police**            | : |
| **Officer for the City of Philadelphia, and**      | : |
|                                                    | : |
| **POLICE OFFICER**                                 | : |
| **PERRY BETTS (BADGE NO. 6761)**                   | : |
| **Individually and as a former Police**            | : |
| **Officer for the City of Philadelphia, and**      | : |
|                                                    | : |
| **POLICE OFFICER**                                 | : |
| **MICHAEL SPICER (BADGE NO. 5180),**               | : |
| **Individually and as a former Police**            | : |
| **Officer for the City of Philadelphia, and**      | : |
|                                                    | : |
| _**Defendants.**_                                  | : |

## COMPLAINT

Plaintiffs Shanta Bowens, Maureen Traina, Andrew Carroll, Larry Francis aka Abdul Jamal, Reginald Carroll, Kelsey Boston, Wayne Booker, Jacqueline Kingwood, Shelita Braxton, Paul Jackson, Rahmeak Taylor, and Joshua Manneto, by and through their attorneys, Eric F. Spade, Esquire, John M. Willis, Esquire, and Val Pleet Wilson, Esquire, do hereby file this Complaint and aver the following:

## I.      JURISDICTION

1.      This action is brought pursuant to 42 U.S.C. § 1983 and the Fourth Amendment to the United States Constitution.

2.      Jurisdiction is proper under 28 U.S.C. §§ 1331 and 1343(1), (3), (4) and the aforementioned statutory and constitutional provisions.

3.      Jurisdiction over state law claims based on supplemental jurisdiction is proper under 28 U.S.C. § 1367.

4.      The amount in controversy, exclusive of interest and costs, exceeds the sum of Seventy-Five Thousand ($75,000.00) Dollars.

## II.      VENUE

5.      All the claims herein arose within the jurisdiction of the United States District Court for the Eastern District of Pennsylvania and involve Defendants who reside within the jurisdiction limits.  Accordingly, venue is proper under 28 U.S.C. § 1391(b) and (c).

## III.      PARTIES

6.      Plaintiff Shanta Bowens is an adult individual citizen of the Commonwealth of Pennsylvania and resident of Philadelphia County, Pennsylvania.

7.      Plaintiff Maureen Traina is an adult individual citizen of the Commonwealth of Pennsylvania and resident of Philadelphia County, Pennsylvania.

8.      Plaintiff Andrew Carroll is an adult individual citizen of the Commonwealth of Pennsylvania and resident of Philadelphia County, Pennsylvania.

9.      Plaintiff Larry Francis aka Abdul Jamal is an adult individual citizen of the Commonwealth of Pennsylvania and resident of Philadelphia County, Pennsylvania

10.     Plaintiff Reginald Carroll is an adult individual citizen of the Commonwealth of Pennsylvania and resident of Philadelphia County, Pennsylvania.

11.     Plaintiff Kelsey Boston is an adult individual citizen of the Commonwealth of Pennsylvania and resident of Philadelphia County, Pennsylvania.

12.     Plaintiff Wayne Booker is an adult individual citizen of the Commonwealth of Pennsylvania and resident of Philadelphia County, Pennsylvania.

13.     Plaintiff Jacqueline Kingwood is an adult individual citizen of the Commonwealth of Pennsylvania and resident of Philadelphia County, Pennsylvania.

14.     Plaintiff Shelita Braxton is an adult individual citizen of the Commonwealth of Pennsylvania and resident of Philadelphia County, Pennsylvania.

15.     Plaintiff Paul Jackson is an adult individual citizen of the Commonwealth of Pennsylvania and resident of Philadelphia County, Pennsylvania.

16.     Plaintiff Rahmeak Taylor is an adult individual citizen of the Commonwealth of Pennsylvania and resident of Philadelphia County, Pennsylvania.

17.     Plaintiff Joshua Manneto is an adult individual citizen of the Commonwealth of Pennsylvania and resident of Philadelphia County, Pennsylvania.

18.     Defendant City of Philadelphia is a municipality organized by and through the Commonwealth of Pennsylvania and was the public employer of the individual defendant.

19.     Defendant Jeffrey Walker (Badge No. 3730) was at all times relevant to this Complaint, employed as a police officer for the City of Philadelphia and was acting under the color of state law.  He is being sued in both his individual and official capacities.

20.     Defendant Thomas Liciardello (Badge No. 4383) was at all times relevant to this Complaint, employed as a police officer for the City of Philadelphia and was

4

acting under the color of state law.  He is being sued in both his individual and official
capacities.

21.    Defendant Brian Reynolds (Badge No. 4268) was at all times relevant to
this Complaint, employed as a police officer for the City of Philadelphia and was acting
under the color of state law.  He is being sued in both his individual and official
capacities.

22.    Defendant Perry Betts (Badge No. 6761) was at all times relevant to this
Complaint, employed as a police officer for the City of Philadelphia and was acting
under the color of state law.  He is being sued in both his individual and official
capacities.

23.    Defendant Michael Spicer (Badge No. 5180) was at all times relevant to
this Complaint, employed as a police officer for the City of Philadelphia and was acting
under the color of state law.  He is being sued in both his individual and official
capacities.

## IV.    GENERAL STATEMENT OF FACT

24.    On or about May 22, 2013, Defendant Walker was arrested and charged
in the United States District Court for the Eastern District of Pennsylvania for acts
including, inter alia, "by means of actual or threatened force or violence or fear of injury,
immediate and future to the victim's person, and by use of a firearm; and by use of his
position as a Philadelphia Police Officer, did obtain personal property, cash and
marijuana unlawfully . . ."

25.    The criminal complaint against Defendant Walker describes how he
disclosed to an FBI informant:

    a.  his prior acts to rob drug dealers of both drugs and money;

    b.  his prior acts of stealing drugs from drug dealers and misreporting the amount he actually confiscated;

    c.  his prior acts of planting drugs in a drug dealer's car so he could arrest the drug dealer, take the drug dealer's keys, and then use the drug dealer's keys to enter the drug dealer's apartment and steal money.

26.    On or about May 21, 2013, Defendant Walker used the FBI informant in carrying out a scheme to steal $15,000 from a drug dealer by planting cocaine in the drug dealer's car, taking the drug dealer's key's, and then using the drug dealer's keys to enter the drug dealer's apartment and steal money.

27.    On or about May 22, 2013, the Philadelphia Police Department suspended Defendant Walker, and eventually, he was terminated for misconduct.

28.    On February 24, 2014, Defendant Walker pled guilty in federal court to attempted robbery that interfered with interstate commerce and carrying a firearm during and in relation to a crime of violence.

29.    The federal government uncovered the conduct of Officer Walker in this case, not the Philadelphia Police Department.

30.    Two years prior, on December 3, 2012, Philadelphia District Attorney, R. Seth Williams, wrote to Police Commissioner Charles Ramsey about the lack of trustworthiness of six members of the narcotics unit.

31.    District Attorney Williams stated in this letter that, "the Philadelphia District Attorney's Office will no longer be using the following officers in narcotics cases:  Police

Officer Thomas Liciardello, Police Officer Brian Reynolds, Police Officer John Speiser, Police Officer Michael Spicer, Police Officer Perry Betts, and Lieutenant Robert Otto."

32.    District Attorney Williams also stated in this letter that, "[t]he Philadelphia District Attorney's Office will no longer accept any narcotics cases for charging when any of these police officers is a necessary witness."

33.    District Attorney Williams's credibility assessment of the specific members was publicly acknowledged in the summer of 2014.

34.    In July 2014, six additional members of the narcotics unit were indicted in federal court-- Thomas Liciardello, Brian Reynolds, Michael Spicer, Perry Betts, Linwood Norman, and John Speiser.

35.    District Attorney Williams's 2012 letter recognized four of these six indicted officers.

36.    Former narcotics unit officer Thomas Liciardello was charged in federal court for RICO conspiracy, conspiracy to deprive of civil rights, deprivation of civil rights, Hobbs Act robbery, carrying a firearm during a crime of violence, and falsification of records.

37.    Former narcotics unit officer Brian Reynolds was charged in federal court for RICO conspiracy, Hobbs Act robbery, carrying a firearm during a crime of violence, falsification of records, and Hobbs Act extortion.

38.    Former narcotics unit officer Michael Spicer was charged in federal court for RICO conspiracy, conspiracy to deprive of civil rights, deprivation of civil rights, Hobbs Act robbery, carrying a firearm during a crime of violence, and Hobbs Act extortion.

39.     Former narcotics unit officer Perry Betts was charged in federal court for RICO conspiracy, conspiracy to deprive of civil rights, Hobbs Act robbery, carrying a firearm during a crime of violence, and falsification of records.

40.     Former narcotics unit officer Linwood Norman was charged in federal court for RICO conspiracy, conspiracy to deprive of civil rights, Hobbs Act robbery, carrying a firearm during a crime of violence, falsification of records, and possession with intent to distribute over 500 grams of cocaine.

41.     Former narcotics unit officer John Speiser was charged in federal court for RICO conspiracy and falsification of records.

42.     On July 31, 2014, Philadelphia Police Commissioner Charles Ramsey acknowledged the federal indictment of these six Philadelphia narcotics unit police officers during a public press conference.

43.     During his press conference, Police Commissioner Charles Ramsey admitted that, "one of the issues, that I've had discussions about and hopefully we get some relief, our contract doesn't allow for rotation, doesn't allow for transfer of individuals, its incidents like this that hopefully will give us what we need to change that. We need to be able to move people from these sensitive situations like this if there is any hint at all that they are engaging in this type of misconduct."

44.     Prior to April 5, 2002, and through at least August 1, 2011, Defendant City of Philadelphia developed and maintained policies and/or customs exhibiting deliberate indifference to the constitutional rights of persons in the City of Philadelphia, which caused the violation of Plaintiffs' rights.

45.     Since the 1980s, there has been a history of Philadelphia Police Officers engaging in rampant illegal conduct in narcotics investigations.

46.     In 1988, six former members of the narcotics unit known as the Five Squad were indicted for selling drugs that they had stolen from drug dealers.

47.     A few years later, eight police officers in the 39th Police District pled guilty to a scheme of illegally searching, falsely arresting, and stealing drugs and money from suspected drug dealers.

48.     In 1995, Philadelphia Police Officers John Baird and five other members of the 39th Police District were federally prosecuted for violating the individual rights and stealing money in more than 40 cases.

49.     A 1998 internal affairs finding that veteran narcotics officer John Boucher, who retired in 1996, was a potentially corrupt Philadelphia Police officer.

50.     In the mid-1990s, the American Civil Liberties Union (ACLU), the National Association for the Advancement of Colored People (NAACP), and the Police-Barrio Relations Project filed civil rights suits against the City of Philadelphia.

51.     The ACLU-NAACP-Police Bario suits arose out of the investigation into corruption and misconduct in the 39th Police District.

52.     In September 1996 a settlement was reached in the ACLU-NAACP-Police Bario cases, which included the creation of an independent and "permanent" Integrity & Accountability Office (IAO) "to analyze and critique accountability and corruption control policies, to identify systemic deficiencies that give rise to or permit corruption and misconduct within the Police Department, and to make recommendations for change." IAO Report on Personnel Management, Sept. 1998, at 2.

53.     Beginning in 1997, the Director of the Integrity & Accountability Office
(IAO) issued regular reports based on their comprehensive study of the policies and
practices of the Philadelphia Police Department.

54.     The reports identified specific deficiencies within the Police Department
and then recommended specific changes to address the deficiencies.

55.     The September 1998 IAO Report on Personnel Management, in relevant
part, states:

a.  the absence of department wide uniform set of standards for use by
sergeants when making assessment of police officer performance; and

b.  the absence of any supervisor accountability during the review of the
evaluation process in the Department.

IAO Report on Personnel Management, Sept. 1998, at 34-36.

56.     The March 2001 IAO Report on the Disciplinary System, in relevant part,
states:

a.  "[I]t is not uncommon for a year, in some cases several years, to
elapse from the date of the infraction until the disciplinary matter is ultimately
resolved."

b.  "A haphazard and unmonitored selection process for PBI Board
members diminishes the value and effectiveness of this important role in the
Department, and contributes to chronic inconsistency in case dispositions."

c.  "[A] pervasive lack of detail and documentation contributes to a
disciplinary system that is in many respects inscrutable, and one that does not
operate by measurable, auditable, consistent standards."

IAO Report on Disciplinary System, March 2001, at 32, 36, 40.

57.    The July 2002 IAO Enforcement of Narcotics Laws Enforcement Report, in relevant part, states:

a.  Current labor contract terms prevent transfers except for formally documented disciplinary reasons or "for purposes of essential manpower requirements."

b.  "The longer narcotics officers remain in this assignment, the more dependent they become on this overtime income to accommodate their adjusted lifestyles."

c.  "It is critical that term limits in the Narcotics Bureau be initiated and enforced on a regular basis."

d.  "Effective supervisory oversight is a critical component in maintaining the integrity of narcotics enforcement agencies."

e.  "The Department has no formal or consistent policy regarding the rotation of narcotics supervisors."

f.  "Since supervisor's names do not appear on the arrest reports and they are not required to maintain activity/patrol logs... It is virtually impossible to monitor the degree of supervisory interaction with their squads and platoons."

IAO Report on Enforcement of Narcotics Laws, July 2002, at 40, 42-44.

58.    The December 2003 Disciplinary System Report found that:

a.  The disciplinary system in the Philadelphia police department remains fundamentally ineffective, inadequate, and unpredictable; and

b.  The disciplinary system will never be adequately reformed as long as it

remains solely within the prerogative of the Philadelphia police

department.

IAO Report on Disciplinary System, December 2003, at 5-7.

59.     "The disciplinary system in the Philadelphia Police Department remains

fundamentally ineffective, inadequate, and unpredictable."  IAO Report on Disciplinary

System, December 2003, at 7.

60.     More recently, the Philadelphia Police Department has been plagued by

cases where Philadelphia Police Officers have been involved in stealing, dealing drugs,

lying under oath, tampering with evidence and other misconduct.

61.     On February 7, 2011, Philadelphia Police Officer James Venziale pled

guilty in federal court to conspiracy and dealing heroin.

62.     On February 7, 2011, Philadelphia Police Officer Robert Snyder pled guilty

in federal court to conspiracy and dealing heroin.

63.     On March 4, 2011, Philadelphia Police Officer Mark Williams was found

guilty by a jury in federal court of conspiracy to steal and deal heroin.

64.     On June 15, 2011, Philadelphia Police Officer Sean Alivera pled guilty to

robbery, conspiracy, kidnapping, official oppression, and drug possession with intent to

deliver.

65.     On June 15, 2011, Philadelphia Police Officer Christopher Luciano pled

guilty to robbery, conspiracy, kidnapping, official oppression, and drug possession with

intent to deliver.

66.     On August 24, 2011, Philadelphia Police Officer Joseph McIntyre pled guilty in federal court to conspiracy and dealing steroid drugs.

67.     Philadelphia Police Officer Christopher Hulmes had been a member of the narcotics unit since 2000.

68.     Officer Hulmes has admitted that he lied under oath on a search-warrant application and while testifying at a December 2011 preliminary hearing.

69.     In May 2012, Philadelphia Police Officer George Sambuca pled guilty in federal court to conspiracy and dealing steroid drugs.

70.     On October 9, 2012, Philadelphia Detective Keith Gidelson pled guilty in federal court to conspiracy and dealing steroid drugs.

71.     In June 2012, Philadelphia Police Officer Jonathan Garcia was charged in federal court with conspiracy to steal and deal heroin.

72.     In June 2012, Philadelphia Police Officer Sydemy Joanis was charged in federal court with conspiracy to steal and deal heroin.

73.     On July 5, 2013, Police Officer Gerald Gibson, in the narcotics unit, was charged with theft and tampering with evidence.

74.     On December 3, 2013, Philadelphia Police Officer Richard Cordero was convicted in federal court of obstructing a federal drug investigation.

75.     During the past decade, the Defendant Officers in this case had numerous civil rights violations alleged against them.

76.     The Philadelphia Police Department repeatedly returned the Defendant Officers to duty despite the pattern of numerous civil rights violations alleged against them.

## COUNT I
### Plaintiff Shanta Bowens
### 42 U.S.C. § 1983
### Against Defendant Officer Perry Betts
### *Malicious Prosecution*

77.    All preceding paragraphs are fully incorporated herein by specific reference as though fully set forth.

78.    On or about March 20, 2006, Plaintiff Shanta Bowens was arrested by Defendant Officer Perry Betts in Philadelphia, Pennsylvania.

79.    Defendant Officer Perry Betts planted drugs on the person of Plaintiff Shanta Bowens and alleged that they belonged to Shanta Bowens.

80.    Shanta Bowens, who had not violated any laws of the Commonwealth of Pennsylvania or any other jurisdiction, was arrested and transported to a police district where he was arraigned on the following charges:

a.  Intentional possession of a controlled substance by a person not registered to  possess the controlled substance, pursuant to 35 P.S. §780-113.

81.    Defendant Officer Perry Betts and other officers prepared and caused to be prepared police paperwork misrepresenting the events that led to the arrest of the Plaintiff Shanta Bowens for the incident described in this complaint.

82.    Defendant Officer Perry Betts was aware of exculpatory information about the Plaintiff Shanta Bowens.

83.    The exculpatory information known to police that was not provided to Shanta Bowens included the real facts and circumstances of the incident.

84.     Defendant Officer Perry Betts misrepresented the events that led to the arrest of Shanta Bowens, and the misrepresentations were intentional, malicious, in bad faith, recklessly indifferent and deliberately indifferent to Shanta Bowens' rights.

85.     The Defender Association of Philadelphia represented Shanta Bowens in her criminal proceeding.

86.     Bowens pled guilty and was sentenced to 12 months probation, and $446.76 in fines, court fees, and probation fees.

87.     As a result of Defendant Officer Walker's activities as described above and his subsequent termination, Shanta Bowens' criminal case was *nolle prossed* by the Philadelphia District Attorney's Office on March 6, 2015.

88.     As a direct and proximate result of the actions of Defendant Officer, Plaintiff Shanta Bowens was deprived of his rights, privileges and immunities under the Fourth, Fifth and Fourteenth Amendments to the United States Constitution and, in particular, the right to be free from excessive force, the right to be free from unlawful arrest, the right to be free from unjustified searches, the right to be free from malicious prosecution, and the right to due process of law.

89.     The actions and/or inactions of Defendant Officer Perry Betts violated the constitutional rights of Shanta Bowens to be free from use of excessive, unreasonable, and unjustified force against his person, the right to be free from malicious prosecution, and the right to due process of law.

90.     All actions taken by the Defendant Officers in this case were taken under color of state law.

15

91.    As a direct and proximate result of the actions and/or inactions of the Defendant Officer Perry Betts in this case, Shanta Bowens has suffered physical pain, loss of liberty, anxiety, fear, mental harm, and financial loss.

92.    Plaintiff Shanta Bowens was damaged and injured as set forth above under 42 U.S.C. §1983 by Defendant Officer Perry Betts in that they, as described in detail in preceding paragraphs, violated Plaintiff's constitutional rights while acting under color of law.

93.    More specifically, Defendant Officer seized and arrested Shanta Bowens, and instituted criminal proceedings against Shanta Bowens without probable cause and with malice.

94.    The criminal proceedings were terminated in favor of Shanta Bowens.

95.    The conduct of Defendant Officer was the direct and proximate cause of Plaintiff Shanta Bowens' harm.

WHEREFORE, Plaintiff Shanta Bowens demands judgment against Defendant Officer Perry Betts in the amount of all damages, including compensatory damages and punitive damages, plus interest, injunctive relief, such other relief as appears reasonable and just, as well as reasonable attorney fees and costs under 42 U.S.C. §1988.

### COUNT II
### Plaintiff Shanta Bowens
### Supplemental State Law Claim
### Against Defendant Officer Perry Betts
### *Malicious Prosecution*

96.    All preceding paragraphs are fully incorporated herein by specific reference as though fully set forth.

97.     Plaintiff Shanta Bowens was damaged and injured as set forth above by

Defendant Officers in that they intentionally and unlawfully instituted criminal

proceedings against Plaintiff Shanta Bowens without probable cause and with malice.

98.     The criminal proceedings were terminated in favor of Shanta Bowens.

99.     The conduct of Defendant Officer Perry Betts was the direct and

proximate cause of Plaintiff's harm.

WHEREFORE, Plaintiff Shanta Bowens demands judgment against Defendant Officer

Perry Betts in the amount of all damages, including compensatory damages and

punitive damages, plus interest, injunctive relief, such other relief as appears

reasonable and just.

### COUNT III
### Plaintiff Shanta Bowens
### 42 U.S.C. § 1983
### Against Defendant City of Philadelphia

100.    All preceding paragraphs are fully incorporated herein by specific

reference as though fully set forth.

101.    Plaintiff Shanta Bowens was damaged and injured as set forth above

under 42 U.S.C. §1983 by Defendant City of Philadelphia in that its Police Officers, as

described in detail in preceding paragraphs, engaged in police misconduct in violation of

Plaintiff's constitutional rights while acting under color of law.

102.    Prior to March 20, 2006, Defendant City of Philadelphia developed and

maintained policies and/or customs of police misconduct exhibiting deliberate

indifference to the constitutional rights of persons in the City of Philadelphia, which

caused the violation of Plaintiff's rights.

103.    It was the policy and/or custom of Defendant Police Officers to engage

while on-duty in criminal conduct, including but not limited to official oppression, perjury, false swearing, unsworn falsification to authorities, false incrimination of others, fictitious reports, tampering with or fabricating physical evidence, tampering with public records or information, intimidation of witnesses or victims, retaliation against witnesses or victims, falsification of police documents, obstruction of administration of law, robbery, theft by unlawful taking, theft by extortion, theft by deception, theft from a motor vehicle, receiving stolen property, illegal searches, unlawful restraint, kidnapping, false imprisonment, criminal coercion, illegal asset forfeiture, excessive use of force, assault and battery, harassment, and criminal conspiracy.

104.   It was the policy and/or custom of Defendant City of Philadelphia to insufficiently supervise, train and/or re-train, and/or discipline against the police misconduct set forth in this Complaint.

105.   It was the policy and/or custom of Defendant City of Philadelphia to inadequately supervise, train, and discipline its Police Officers, including the Defendant Police Officers, against a code of silence or "blue code" of Police Officers refusing to intervene against or provide truthful information against constitutional violations and other unlawful misconduct committed by their fellow Police Officers.

106.   The present and past Philadelphia Police Commissioners and Deputy Commissioners with policy-making authority had actual knowledge and/or constructive knowledge of the policies and customs of Philadelphia Police Department failing to sufficiently supervise, train and/or re-train, and discipline against the police misconduct set forth in this Complaint.

107.    As a result of the above-described policies and customs and/or the lack thereof, Police Officers of the City of Philadelphia, including the Defendant Police Officers, believed that their actions would not be properly monitored by supervisory Officers and that misconduct would not be investigated or sanctioned, but would be tolerated.

WHEREFORE, Plaintiff Shanta Bowens demands judgment against Defendant City of Philadelphia in the amount of all damages, including compensatory damages and punitive damages, plus interest, injunctive relief, such other relief as appears reasonable and just, as well as reasonable attorney fees and costs under 42 U.S.C. §1988.

### COUNT IV
### Plaintiff Maureen Traina
### 42 U.S.C. § 1983
### Against Defendant Officer Michael Spicer
### *Malicious Prosecution*

108.    All preceding paragraphs are fully incorporated herein by specific reference as though fully set forth.

109.    On or about June 1, 2006, Plaintiff Maureen Traina was present in a Philadelphia, Pennsylvania neighborhood.

110.    On or about the same time Defendant Officer Michael Spicer was present in the same Philadelphia, Pennsylvania neighborhood.

111.    Shortly thereafter, Defendant Officer unlawfully stopped Plaintiff Maureen Traina.

112.    Defendant Officer falsely alleged that Maureen Traina was engaged in illegal activity.

19

113.    Maureen Traina, who had not violated any laws of the Commonwealth of Pennsylvania or any other jurisdiction, was arrested and transported to a police district where he was arraigned on the following charges:

> a.  Manufacture/delivery/possession with intent of a controlled substance, pursuant to 35 P.S. §780-113;
>
> b.  Criminal conspiracy engaging in manufacture/delivery/possession with intent of a controlled substance, pursuant to 18 P.S. §903;
>
> c.  Possession of prohibited firearm, pursuant to 18 P.S. §6105;
>
> d.  Knowing/ Intentionally possessing controlled substance, pursuant to 35 P.S. §780-113;
>
> e.  CSA- Possession of paraphernalia, pursuant to 35 P.S. §780-113; and,
>
> f.  Possession of an instrument of crime, pursuant to 18 P.S. §907.

114.    Defendant Officer prepared and caused to be prepared police paperwork misrepresenting the events that led to the arrest of the Plaintiff Maureen Traina for the incident described in this complaint.

115.    Defendant Officer was aware of exculpatory information about the Plaintiff Maureen Traina.

116.    The exculpatory information known to police that was not provided to Maureen Traina included the real facts and circumstances of the incident.

117.    Defendant Officer misrepresented the events that led to the arrest of Maureen Traina, and the misrepresentations were intentional, malicious, in bad faith, recklessly indifferent and deliberately indifferent to Maureen Traina's rights.

20

118.    The Defender Association of Philadelphia represented Maureen Traina in his criminal proceeding.

119.    After a preliminary hearing, Maureen Traina's case was held over for trial, and she pled guilty to possession with intent to manufacture or deliver a controlled substance, criminal conspiracy, possession of a controlled substance and possession of drug paraphernalia.

120.    Maureen Traina was sentenced to eleven and a half months to twenty-three months of confinement, two years probation, and $756.44.54 in fines, court fees and probation fees.

121.    As a result of Defendant Officer Walker's activities as described above and his subsequent termination, Maureen Traina's criminal case was *nolle prossed* by the Philadelphia District Attorney's Office on January 9, 2015.

122.    Plaintiff was damaged and injured as set forth above under 42 U.S.C. §1983 by Defendant Officer, in that they, as described in detail in preceding paragraphs, violated Plaintiff's constitutional rights while acting under color of law.

123.    More specifically, Defendant Officer seized and arrested Maureen Traina, and instituted criminal proceedings against Maureen Traina without probable cause and with malice.

124.    The criminal proceedings were terminated in favor of Maureen Traina.

125.    The conduct of Defendant Officer was the direct and proximate cause of Plaintiff Maureen Traina's harm.

WHEREFORE, Plaintiff Maureen Traina demands judgment against Defendant Officer Michael Spicer in the amount of all damages, including compensatory damages and

punitive damages, plus interest, injunctive relief, such other relief as appears reasonable and just, as well as reasonable attorney fees and costs under 42 U.S.C. §1988.

## COUNT V
### Plaintiff Maureen Traina
### Supplemental State Law Claim
### Against Defendant Officer Michael Spicer
### *Malicious Prosecution*

126.   All preceding paragraphs are fully incorporated herein by specific reference as though fully set forth.

127.   Plaintiff Maureen Traina was damaged and injured as set forth above by Defendant Officer Michael Spicer in that they intentionally and unlawfully instituted criminal proceedings against Plaintiff Maureen Traina without probable cause and with malice.

128.   The criminal proceedings were terminated in favor of Maureen Traina.

129.   The conduct of Defendant Officer Michael Spicer was the direct and proximate cause of Plaintiff's harm.

WHEREFORE, Plaintiff Maureen Traina demands judgment against Defendant Officer Michael Spicer in the amount of all damages, including compensatory damages and punitive damages, plus interest, injunctive relief, such other relief as appears reasonable and just.

## COUNT VI
### Plaintiff Maureen Traina
### 42 U.S.C. § 1983
### Against Defendant City of Philadelphia

130.   All preceding paragraphs are fully incorporated herein by specific reference as though fully set forth.

131.   Plaintiff Maureen Traina was damaged and injured as set forth above under 42 U.S.C. §1983 by Defendant City of Philadelphia in that its Police Officers, as described in detail in preceding paragraphs, engaged in police misconduct in violation of Plaintiff's constitutional rights while acting under color of law.

132.   Prior to June 1, 2006, Defendant City of Philadelphia developed and maintained policies and/or customs of police misconduct exhibiting deliberate indifference to the constitutional rights of persons in the City of Philadelphia, which caused the violation of Plaintiff's rights.

133.   It was the policy and/or custom of Defendant Police Officers to engage while on-duty in criminal conduct, including but not limited to official oppression, perjury, false swearing, unsworn falsification to authorities, false incrimination of others, fictitious reports, tampering with or fabricating physical evidence, tampering with public records or information, intimidation of witnesses or victims, retaliation against witnesses or victims, falsification of police documents, obstruction of administration of law, robbery, theft by unlawful taking, theft by extortion, theft by deception, theft from a motor vehicle, receiving stolen property, illegal searches, unlawful restraint, kidnapping, false imprisonment, criminal coercion, illegal asset forfeiture, excessive use of force, assault and battery, harassment, and criminal conspiracy.

134.   It was the policy and/or custom of Defendant City of Philadelphia to insufficiently supervise, train and/or re-train, and/or discipline against the police misconduct set forth in this Complaint.

135.   It was the policy and/or custom of Defendant City of Philadelphia to inadequately supervise, train, and discipline its Police Officers, including the Defendant Police Officers, against a code of silence or "blue code" of Police Officers refusing to intervene against or provide truthful information against constitutional violations and other unlawful misconduct committed by their fellow Police Officers.

136.   The present and past Philadelphia Police Commissioners and Deputy Commissioners with policy-making authority had actual knowledge and/or constructive knowledge of the policies and customs of Philadelphia Police Department failing to sufficiently supervise, train and/or re-train, and discipline against the police misconduct set forth in this Complaint.

137.   As a result of the above-described policies and customs and/or the lack thereof, Police Officers of the City of Philadelphia, including the Defendant Police Officers, believed that their actions would not be properly monitored by supervisory Officers and that misconduct would not be investigated or sanctioned, but would be tolerated.

WHEREFORE, Plaintiff Maureen Traina demands judgment against Defendant City of Philadelphia in the amount of all damages, including compensatory damages and punitive damages, plus interest, injunctive relief, such other relief as appears reasonable and just, as well as reasonable attorney fees and costs under 42 U.S.C. §1988.

**COUNT VII**
**Plaintiff Andrew Carroll**
**42 U.S.C. § 1983**
**Against Defendant Officer Michael Spicer**
*Malicious Prosecution*

24

138.  All preceding paragraphs are fully incorporated herein by specific reference as though fully set forth.

139.    On or about January 9, 2007, Plaintiff Andrew Carroll was present in a neighborhood in Philadelphia, Pennsylvania.

140.    On or about the same time Defendant Officer Michael Spicer was present in the same above-mentioned neighborhood

141.  Defendant Officer Michael Spicer approached and unlawfully stopped Andrew Carroll.

142.  Defendant Officer falsely alleged that Andrew Carroll was engaged in illegal activity.

143.    Defendant Officer then planted drugs on Andrew Carroll's person and alleged that they belonged to Andrew Carroll.

144.    Andrew Carroll, who had not violated any laws of the Commonwealth of Pennsylvania or any other jurisdiction, was arrested and transported to a police district where he was arraigned on the following charges:

    a.  Manufacture, delivery, or possession with intent to manufacture or deliver a controlled substance, pursuant to 35 P.S. §780-113;

    b.  Criminal Conspiracy Engaging- manufacture/delivery/ or possession with intent to manufacture or deliver a controlled substance, pursuant to 18 P.S. §903; and

    c.  Intentionally possessing controlled substance, pursuant to 35 P.S. §780-113.

145.    Defendant Officer prepared and caused to be prepared police paperwork misrepresenting the events that led to the arrest of the Plaintiff Andrew Carroll for the incident described in this complaint.

146.    Defendant Officer was aware of exculpatory information about the Plaintiff Andrew Carroll.

147.    The exculpatory information known to police that was not provided to Andrew Carroll included the real facts and circumstances of the incident.

148.    Defendant Officer misrepresented the events that led to the arrest of Andrew Carroll, and the misrepresentations were intentional, malicious, in bad faith, recklessly indifferent and deliberately indifferent to Andrew Carroll's rights.

149.    Private counsel represented Andrew Carroll in his criminal proceeding.

150.    After a preliminary hearing, Andrew Carroll's case was held over for trial, and after a trial he was found guilty of possession with intent to manufacture or deliver a controlled substance.

151.    Andrew Carroll was sentenced to three to six years confinement and $724.00 in fines and court fees.

152.    Andrew Carroll served at least three and a half years in confinement for this conviction.

153.    As a result of Defendant Officer Walker's activities as described above and his subsequent termination, Andrew Carroll's criminal case was *nolle prossed* by the Philadelphia District Attorney's Office on March 6, 2015.

154.    Plaintiff was damaged and injured as set forth above under 42 U.S.C. §1983 by Defendant Officer, in that they, as described in detail in preceding paragraphs, violated Plaintiff's constitutional rights while acting under color of law.

155.    More specifically, Defendant Officers seized and arrested Andrew Carroll, and instituted criminal proceedings against Andrew Carroll without probable cause and with malice.

156.    The criminal proceedings were terminated in favor of Andrew Carroll.

157.    The conduct of Defendant Officers was the direct and proximate cause of Plaintiff Andrew Carroll's harm.

WHEREFORE, Plaintiff Andrew Carroll demands judgment against Defendant Officer Michael Spicer in the amount of all damages, including compensatory damages and punitive damages, plus interest, injunctive relief, such other relief as appears reasonable and just, as well as reasonable attorney fees and costs under 42 U.S.C. §1988.

### COUNT VIII
### Plaintiff Andrew Carroll
### Supplemental State Law Claim
### Against Defendant Officer Michael Spicer
### *Malicious Prosecution*

158.    All preceding paragraphs are fully incorporated herein by specific reference as though fully set forth.

159.    Plaintiff Andrew Carroll was damaged and injured as set forth above by Defendant Officer Michael Spicer in that they intentionally and unlawfully instituted criminal proceedings against Plaintiff Andrew Carroll without probable cause and with malice.

160.    The criminal proceedings were terminated in favor of Andrew Carroll.

161.    The conduct of Defendant Officer Michael Spicer was the direct and
proximate cause of Plaintiff's harm.

WHEREFORE, Plaintiff Andrew Carroll demands judgment against Defendant Officer
Michael Spicer in the amount of all damages, including compensatory damages and
punitive damages, plus interest, injunctive relief, such other relief as appears
reasonable and just.

**COUNT IX**
**Plaintiff Andrew Carroll**
**42 U.S.C. § 1983**
**Against Defendant City of Philadelphia**

162.     All preceding paragraphs are fully incorporated herein by specific
reference as though fully set forth.

163.    Plaintiff Andrew Carroll was damaged and injured as set forth above under
42 U.S.C. §1983 by Defendant City of Philadelphia in that its Police Officers, as
described in detail in preceding paragraphs, engaged in police misconduct in violation of
Plaintiff's constitutional rights while acting under color of law.

164.    Prior to January 9, 2007, Defendant City of Philadelphia developed and
maintained policies and/or customs of police misconduct exhibiting deliberate
indifference to the constitutional rights of persons in the City of Philadelphia, which
caused the violation of Plaintiff's rights.

165.    It was the policy and/or custom of Defendant Police Officers to engage
while on-duty in criminal conduct, including but not limited to official oppression, perjury,
false swearing, unsworn falsification to authorities, false incrimination of others, fictitious
reports, tampering with or fabricating physical evidence, tampering with public records

28

or information, intimidation of witnesses or victims, retaliation against witnesses or victims, falsification of police documents, obstruction of administration of law, robbery, theft by unlawful taking, theft by extortion, theft by deception, theft from a motor vehicle, receiving stolen property, illegal searches, unlawful restraint, kidnapping, false imprisonment, criminal coercion, illegal asset forfeiture, excessive use of force, assault and battery, harassment, and criminal conspiracy.

166.    It was the policy and/or custom of Defendant City of Philadelphia to insufficiently supervise, train and/or re-train, and/or discipline against the police misconduct set forth in this Complaint.

167.    It was the policy and/or custom of Defendant City of Philadelphia to inadequately supervise, train, and discipline its Police Officers, including the Defendant Police Officers, against a code of silence or "blue code" of Police Officers refusing to intervene against or provide truthful information against constitutional violations and other unlawful misconduct committed by their fellow Police Officers.

168.    The present and past Philadelphia Police Commissioners and Deputy Commissioners with policy-making authority had actual knowledge and/or constructive knowledge of the policies and customs of Philadelphia Police Department failing to sufficiently supervise, train and/or re-train, and discipline against the police misconduct set forth in this Complaint.

169.    As a result of the above-described policies and customs and/or the lack thereof, Police Officers of the City of Philadelphia, including the Defendant Police Officers, believed that their actions would not be properly monitored by supervisory

29

Officers and that misconduct would not be investigated or sanctioned, but would be tolerated.

WHEREFORE, Plaintiff Andrew Carroll demands judgment against Defendant City of Philadelphia in the amount of all damages, including compensatory damages and punitive damages, plus interest, injunctive relief, such other relief as appears reasonable and just, as well as reasonable attorney fees and costs under 42 U.S.C. §1988.

### COUNT X
**Plaintiff Larry Francis aka Abdul Jamal**
**42 U.S.C. § 1983**
**Against Defendant Officer Michael Spicer**
*Malicious Prosecution*

170.  All preceding paragraphs are fully incorporated herein by specific reference as though fully set forth.

171.    On or about February 21, 2007, Plaintiff Larry Francis aka Abdul Jamal was present in a neighborhood in Philadelphia, Pennsylvania.

172.    On or about the same time Defendant Officer Michael Spicer was present in the same above-mentioned neighborhood

173.  Defendant Officer Michael Spicer approached Larry Francis aka Abdul Jamal and unlawfully stopped him.

174.  Defendant Officer falsely alleged that Larry Francis aka Abdul Jamal was engaged in illegal activity.

175.    Defendant Officer then planted drugs on Larry Francis aka Abdul Jamal's person and alleged that they belonged to Larry Francis aka Abdul Jamal.

176.  Defendant Officers confiscated money from Larry Francis aka Abdul Jamal, which Defendant Officer did not report.

177.    Larry Francis aka Abdul Jamal, who had not violated any laws of the Commonwealth of Pennsylvania or any other jurisdiction, was arrested and transported to a police district where he was arraigned on the following charges:

a.  Manufacture, delivery; or possession with intent to manufacture or deliver a controlled substance, pursuant to 35 P.S. §780-113;

b.  Intentionally possessing controlled substance by a person not registered to possess, pursuant to 35 P.S. §780-113; and

c.  Possession of an instrument of crime, pursuant to 18 P.S. §907.

178.    Defendant Officer prepared and caused to be prepared police paperwork misrepresenting the events that led to the arrest of the Plaintiff Larry Francis aka Abdul Jamal for the incident described in this complaint.

179.    Defendant Officer was aware of exculpatory information about the Plaintiff Larry Francis aka Abdul Jamal.

180.    The exculpatory information known to police that was not provided to Larry Francis aka Abdul Jamal included the real facts and circumstances of the incident.

181.    Defendant Officer misrepresented the events that led to the arrest of Larry Francis aka Abdul Jamal, and the misrepresentations were intentional, malicious, in bad faith, recklessly indifferent and deliberately indifferent Larry Francis aka Abdul Jamal's rights.

182.    Private counsel represented Larry Francis aka Abdul Jamal in his criminal proceeding.

183.   After a preliminary hearing, Larry Francis aka Abdul Jamal's case was held over for trial, and after a trial he was found guilty of possession with intent to manufacture or deliver a controlled substance and criminal conspiracy.

184.   Larry Francis aka Abdul Jamal was sentenced to 42 to 84 months confinement and $1,038.52 in fines and court fees.

185.   As a result of Defendant Officer Walker's activities as described above and his subsequent termination, Larry Francis aka Abdul Jamal's criminal case was *nolle prossed* by the Philadelphia District Attorney's Office on June 19, 2015.

186.   Plaintiff was damaged and injured as set forth above under 42 U.S.C. §1983 by Defendant Officer, in that he, as described in detail in preceding paragraphs, violated Plaintiff's constitutional rights while acting under color of law.

187.   More specifically, Defendant Officer seized and arrested Larry Francis aka Abdul Jamal, and instituted criminal proceedings against Larry Francis aka Abdul Jamal without probable cause and with malice.

188.   The criminal proceedings were terminated in favor of Larry Francis aka Abdul Jamal.

189.   The conduct of Defendant Officer was the direct and proximate cause of Plaintiff Larry Francis aka Abdul Jamal's harm.

WHEREFORE, Plaintiff Larry Francis aka Abdul Jamal demands judgment against Defendant Officer Michael Spicer in the amount of all damages, including compensatory damages and punitive damages, plus interest, injunctive relief, such other relief as appears reasonable and just, as well as reasonable attorney fees and costs under 42 U.S.C. §1988.

32

### COUNT XI
### Plaintiff Larry Francis aka Abdul Jamal
### Supplemental State Law Claim
### Against Defendant Officer Michael Spicer
### *Malicious Prosecution*

190.    All preceding paragraphs are fully incorporated herein by specific reference as though fully set forth.

191.    Plaintiff Larry Francis aka Abdul Jamal was damaged and injured as set forth above by Defendant Officer Michael Spicer in that he intentionally and unlawfully instituted criminal proceedings against Plaintiff Larry Francis aka Abdul Jamal without probable cause and with malice.

192.    The criminal proceedings were terminated in favor of Larry Francis aka Abdul Jamal.

193.    The conduct of Defendant Officer Michael Spicer was the direct and proximate cause of Plaintiff's harm.

WHEREFORE, Plaintiff Larry Francis aka Abdul Jamal demands judgment against Defendant Officer Michael Spicer in the amount of all damages, including compensatory damages and punitive damages, plus interest, injunctive relief, such other relief as appears reasonable and just.

### COUNT XII
### Plaintiff Larry Francis aka Abdul Jamal
### 42 U.S.C. § 1983
### Against Defendant City of Philadelphia

194.     All preceding paragraphs are fully incorporated herein by specific reference as though fully set forth.

195.    Plaintiff Larry Francis aka Abdul Jamal was damaged and injured as set forth above under 42 U.S.C. §1983 by Defendant City of Philadelphia in that its Police

Officers, as described in detail in preceding paragraphs, engaged in police misconduct in violation of Plaintiff's constitutional rights while acting under color of law.

196.   Prior to February 21, 2007, Defendant City of Philadelphia developed and maintained policies and/or customs of police misconduct exhibiting deliberate indifference to the constitutional rights of persons in the City of Philadelphia, which caused the violation of Plaintiff's rights.

197.   It was the policy and/or custom of Defendant Police Officers to engage while on-duty in criminal conduct, including but not limited to official oppression, perjury, false swearing, unsworn falsification to authorities, false incrimination of others, fictitious reports, tampering with or fabricating physical evidence, tampering with public records or information, intimidation of witnesses or victims, retaliation against witnesses or victims, falsification of police documents, obstruction of administration of law, robbery, theft by unlawful taking, theft by extortion, theft by deception, theft from a motor vehicle, receiving stolen property, illegal searches, unlawful restraint, kidnapping, false imprisonment, criminal coercion, illegal asset forfeiture, excessive use of force, assault and battery, harassment, and criminal conspiracy.

198.   It was the policy and/or custom of Defendant City of Philadelphia to insufficiently supervise, train and/or re-train, and/or discipline against the police misconduct set forth in this Complaint.

199.   It was the policy and/or custom of Defendant City of Philadelphia to inadequately supervise, train, and discipline its Police Officers, including the Defendant Police Officers, against a code of silence or "blue code" of Police Officers refusing to

intervene against or provide truthful information against constitutional violations and other unlawful misconduct committed by their fellow Police Officers.

200.   The present and past Philadelphia Police Commissioners and Deputy Commissioners with policy-making authority had actual knowledge and/or constructive knowledge of the policies and customs of Philadelphia Police Department failing to sufficiently supervise, train and/or re-train, and discipline against the police misconduct set forth in this Complaint.

201.   As a result of the above-described policies and customs and/or the lack thereof, Police Officers of the City of Philadelphia, including the Defendant Police Officers, believed that their actions would not be properly monitored by supervisory Officers and that misconduct would not be investigated or sanctioned, but would be tolerated.

WHEREFORE, Plaintiff Larry Francis aka Abdul Jamal demands judgment against Defendant City of Philadelphia in the amount of all damages, including compensatory damages and punitive damages, plus interest, injunctive relief, such other relief as appears reasonable and just, as well as reasonable attorney fees and costs under 42 U.S.C. §1988.

**COUNT XIII**
**Plaintiff Reginald Carroll**
**42 U.S.C. § 1983**
**Against Defendant Officer Michael Spicer**
*Malicious Prosecution*

202.   All preceding paragraphs are fully incorporated herein by specific reference as though fully set forth.

203.   On or about March 1, 2007, Plaintiff Reginald Carroll was present in a neighborhood in Philadelphia, Pennsylvania.

204.   On or about the same time Defendant Officer Michael Spicer was also present in the neighborhood in Philadelphia, Pennsylvania.

205.   Defendant Officer falsely alleged that Reginald Carroll was engaged in illegal activity.

206.   Defendant Officer then planted drugs on the person of Reginald Carroll and alleged that they belonged to Plaintiff Reginald Carroll.

207.   Reginald Carroll, who had not violated any laws of the Commonwealth of Pennsylvania or any other jurisdiction, was arrested and transported to a police district where he was arraigned on the following charges:

a.  Manufacture, delivery, or possession with intent to manufacture or deliver a controlled substance, pursuant to 35 P.S. §780-113;

b.  Intentionally possessing controlled substance by a person not registered to possess, pursuant to 35 P.S. §780-113; and

c.  Criminal conspiracy to manufacture/deliver/possess a controlled substance, pursuant to 18 P.S. §901.

208.   Defendant Officer prepared and caused to be prepared police paperwork misrepresenting the events that led to the arrest of the Plaintiff Reginald Carroll for the incident described in this complaint.

209.   Defendant Officer was aware of exculpatory information about the Plaintiff Reginald Carroll.

210. The exculpatory information known to police that was not provided to Reginald Carroll included the real facts and circumstances of the incident.

211. Defendant Officer misrepresented the events that led to the arrest of Reginald Carroll, and the misrepresentations were intentional, malicious, in bad faith, recklessly indifferent and deliberately indifferent to Reginald Carroll's rights.

212. The Defender Association of Philadelphia represented Reginald Carroll in his criminal proceeding.

213. After a preliminary hearing, Reginald Carroll's case was held over for trial, and he pled guilty to possession with intent to manufacture or deliver a controlled substance and criminal conspiracy.

214. Reginald Carroll was sentenced to 6 to 23 months confinement, 2 years probation, and $882.94 in fines and court fees.

215. As a result of Defendant Officer Walker's activities as described above and his subsequent termination, Reginald Carroll's criminal case was *nolle prossed* by the Philadelphia District Attorney's Office on January 9, 2015.

216. Plaintiff Reginald Carroll was damaged and injured as set forth above under 42 U.S.C. §1983 by Defendant Officer, in that he, as described in detail in preceding paragraphs, violated Plaintiff's constitutional rights while acting under color of law.

217. More specifically, Defendant Officer Michael Spicer seized and arrested Reginald Carroll, and instituted criminal proceedings against Reginald Carroll without probable cause and with malice.

218. The criminal proceedings were terminated in favor of Reginald Carroll.

219.   The conduct of Defendant Officer Michael Spicer was the direct and

proximate cause of Plaintiff Reginald Carroll's harm.

WHEREFORE, Plaintiff Reginald Carroll demands judgment against Defendant Officer

Michael Spicer in the amount of all damages, including compensatory damages and

punitive damages, plus interest, injunctive relief, such other relief as appears

reasonable and just, as well as reasonable attorney fees and costs under 42 U.S.C.

§1988.

### COUNT XIV
### Plaintiff Reginald Carroll
### Supplemental State Law Claim
### Against Defendant Officer Michael Spicer
### *Malicious Prosecution*

220.   All preceding paragraphs are fully incorporated herein by specific
reference as though fully set forth.

221.   Plaintiff Reginald Carroll was damaged and injured as set forth above by

Defendant Officer Michael Spicer in that he intentionally and unlawfully instituted

criminal proceedings against Plaintiff Reginald Carroll without probable cause and with

malice.

222.   The criminal proceedings were terminated in favor of Reginald Carroll.

223.   The conduct of Defendant Officer Michael Spicer was the direct and

proximate cause of Plaintiff's harm.

WHEREFORE, Plaintiff Reginald Carroll demands judgment against Defendant Officer

Michael Spicer in the amount of all damages, including compensatory damages and

punitive damages, plus interest, injunctive relief, such other relief as appears

reasonable and just.

38

### COUNT XV
### Plaintiff Reginald Carroll
### 42 U.S.C. § 1983
### Against Defendant City of Philadelphia

224.   All preceding paragraphs are fully incorporated herein by specific reference as though fully set forth.

225.   Plaintiff Reginald Carroll was damaged and injured as set forth above under 42 U.S.C. §1983 by Defendant City of Philadelphia in that its Police Officers, as described in detail in preceding paragraphs, engaged in police misconduct in violation of Plaintiff's constitutional rights while acting under color of law.

226.   Prior to March 1, 2007, Defendant City of Philadelphia developed and maintained policies and/or customs of police misconduct exhibiting deliberate indifference to the constitutional rights of persons in the City of Philadelphia, which caused the violation of Plaintiff's rights.

227.   It was the policy and/or custom of Defendant Police Officers to engage while on-duty in criminal conduct, including but not limited to official oppression, perjury, false swearing, unsworn falsification to authorities, false incrimination of others, fictitious reports, tampering with or fabricating physical evidence, tampering with public records or information, intimidation of witnesses or victims, retaliation against witnesses or victims, falsification of police documents, obstruction of administration of law, robbery, theft by unlawful taking, theft by extortion, theft by deception, theft from a motor vehicle, receiving stolen property, illegal searches, unlawful restraint, kidnapping, false imprisonment, criminal coercion, illegal asset forfeiture, excessive use of force, assault and battery, harassment, and criminal conspiracy.

228.   It was the policy and/or custom of Defendant City of Philadelphia to

insufficiently supervise, train and/or re-train, and/or discipline against the police misconduct set forth in this Complaint.

229.    It was the policy and/or custom of Defendant City of Philadelphia to inadequately supervise, train, and discipline its Police Officers, including the Defendant Police Officers, against a code of silence or "blue code" of Police Officers refusing to intervene against or provide truthful information against constitutional violations and other unlawful misconduct committed by their fellow Police Officers.

230.    The present and past Philadelphia Police Commissioners and Deputy Commissioners with policy-making authority had actual knowledge and/or constructive knowledge of the policies and customs of Philadelphia Police Department failing to sufficiently supervise, train and/or re-train, and discipline against the police misconduct set forth in this Complaint.

231.    As a result of the above-described policies and customs and/or the lack thereof, Police Officers of the City of Philadelphia, including the Defendant Police Officers, believed that their actions would not be properly monitored by supervisory Officers and that misconduct would not be investigated or sanctioned, but would be tolerated.

WHEREFORE, Plaintiff Reginald Carroll demands judgment against Defendant City of Philadelphia in the amount of all damages, including compensatory damages and punitive damages, plus interest, injunctive relief, such other relief as appears reasonable and just, as well as reasonable attorney fees and costs under 42 U.S.C. §1988.

## COUNT XVI
## Plaintiff Kelsey Boston

40

## 42 U.S.C. § 1983
## Against Defendant Officer Perry Betts
### *Malicious Prosecution*

232.    All preceding paragraphs are fully incorporated herein by specific reference as though fully set forth.

233.    On or about October 25, 2007, Plaintiff Kelsey Boston was present in a neighborhood in Philadelphia, Pennsylvania.

234.    On or about the same time Defendant Officer Perry Betts was present in the same neighborhood in Philadelphia, Pennsylvania.

235.    Defendant Officer Betts falsely alleged that Kelsey Boston was engaged in illegal activity.

236.    Defendant Officer Betts then planted drugs on the person of Kelsey Boston and alleged that they belonged to Kelsey Boston.

237.    Kelsey Boston, who had not violated any laws of the Commonwealth of Pennsylvania or any other jurisdiction, was arrested and transported to a police district where she was arraigned on the following charges:

   a.  Intentional possession of controlled substance, pursuant to 35 P.S. §780-113.

238.    Defendant Officer Betts prepared and caused to be prepared police paperwork misrepresenting the events that led to the arrest of Kelsey Boston for the incident described in this complaint.

239.    Defendant Officer Betts was aware of exculpatory information about the arrest of Kelsey Boston.

240.    The exculpatory information known to police that was not provided to Kelsey Boston included the real facts and circumstances of the incident.

241.    Defendant Officer Betts misrepresented the events that led to the arrest of Kelsey Boston, and the misrepresentations were intentional, malicious, in bad faith, recklessly indifferent and deliberately indifferent to Kelsey Boston's rights.

242.    The Defender Association of Philadelphia represented Kelsey Boston in her criminal proceeding.

243.    Kelsey Boston pled guilty to possession of a controlled substance.

244.    Kelsey Boston was sentenced to six months probation and $517.23 in fines and court fees.

245.    As a result of Defendant Officer Walker's activities as described above and his subsequent termination, Kelsey Boston's criminal case was *nolle prossed* by the Philadelphia District Attorney's Office on March 6, 2015.

246.    Plaintiff was damaged and injured as set forth above under 42 U.S.C. §1983 by Defendant Officer Betts, in that he, as described in detail in preceding paragraphs, violated Plaintiff's constitutional rights while acting under color of law.

247.    More specifically, Defendant Officer Betts seized and arrested Kelsey Boston, and instituted criminal proceedings against Kelsey Boston without probable cause and with malice.

248.    The criminal proceedings were terminated in favor of Kelsey Boston.

249.    The conduct of Defendant Officer Betts was the direct and proximate cause of Kelsey Boston's harm.

WHEREFORE, Plaintiff Kelsey Boston demands judgment against Defendant Officer Perry Betts in the amount of all damages, including compensatory damages and punitive damages, plus interest, injunctive relief, such other relief as appears reasonable and just, as well as reasonable attorney fees and costs under 42 U.S.C. §1988.

## COUNT XVII
### Plaintiff Kelsey Boston
### Supplemental State Law Claim
### Against Defendant Officer Perry Betts
### *Malicious Prosecution*

250.    All preceding paragraphs are fully incorporated herein by specific reference as though fully set forth.

251.    Plaintiff Kelsey Boston was damaged and injured as set forth above by Defendant Officer Betts in that he intentionally and unlawfully instituted criminal proceedings against Plaintiff Kelsey Boston without probable cause and with malice.

252.    The criminal proceedings were terminated in favor of Kelsey Boston.

253.    The conduct of Defendant Officer Perry Betts was the direct and proximate cause of Plaintiff's harm.

WHEREFORE, Plaintiff Kelsey Boston demands judgment against Defendant Officer Perry Betts in the amount of all damages, including compensatory damages and punitive damages, plus interest, injunctive relief, such other relief as appears reasonable and just.

## COUNT XVIII
### Plaintiff Kelsey Boston
### 42 U.S.C. § 1983
### Against Defendant City of Philadelphia

43

254.    All preceding paragraphs are fully incorporated herein by specific reference as though fully set forth.

255.    Plaintiff Kelsey Boston was damaged and injured as set forth above under 42 U.S.C. §1983 by Defendant City of Philadelphia in that its Police Officers, as described in detail in preceding paragraphs, engaged in police misconduct in violation of Plaintiff's constitutional rights while acting under color of law.

256.    Prior to October 25, 2007, Defendant City of Philadelphia developed and maintained policies and/or customs of police misconduct exhibiting deliberate indifference to the constitutional rights of persons in the City of Philadelphia, which caused the violation of Plaintiff's rights.

257.    It was the policy and/or custom of Defendant Police Officers to engage while on-duty in criminal conduct, including but not limited to official oppression, perjury, false swearing, unsworn falsification to authorities, false incrimination of others, fictitious reports, tampering with or fabricating physical evidence, tampering with public records or information, intimidation of witnesses or victims, retaliation against witnesses or victims, falsification of police documents, obstruction of administration of law, robbery, theft by unlawful taking, theft by extortion, theft by deception, theft from a motor vehicle, receiving stolen property, illegal searches, unlawful restraint, kidnapping, false imprisonment, criminal coercion, illegal asset forfeiture, excessive use of force, assault and battery, harassment, and criminal conspiracy.

258.    It was the policy and/or custom of Defendant City of Philadelphia to insufficiently supervise, train and/or re-train, and/or discipline against the police misconduct set forth in this Complaint.

259.    It was the policy and/or custom of Defendant City of Philadelphia to inadequately supervise, train, and discipline its Police Officers, including the Defendant Police Officers, against a code of silence or "blue code" of Police Officers refusing to intervene against or provide truthful information against constitutional violations and other unlawful misconduct committed by their fellow Police Officers.

260.    The present and past Philadelphia Police Commissioners and Deputy Commissioners with policy-making authority had actual knowledge and/or constructive knowledge of the policies and customs of Philadelphia Police Department failing to sufficiently supervise, train and/or re-train, and discipline against the police misconduct set forth in this Complaint.

261.    As a result of the above-described policies and customs and/or the lack thereof, Police Officers of the City of Philadelphia, including the Defendant Police Officers, believed that their actions would not be properly monitored by supervisory Officers and that misconduct would not be investigated or sanctioned, but would be tolerated.

WHEREFORE, Plaintiff Kelsey Boston demands judgment against Defendant City of Philadelphia in the amount of all damages, including compensatory damages and punitive damages, plus interest, injunctive relief, such other relief as appears reasonable and just, as well as reasonable attorney fees and costs under 42 U.S.C. §1988.

**COUNT XIX**
**Plaintiff Wayne Booker**
**42 U.S.C. § 1983**
**Against Defendant Officer Brian Reynolds**
*Malicious Prosecution*

45

262.   All preceding paragraphs are fully incorporated herein by specific reference as though fully set forth.

263.   On or about September 16, 2008, Plaintiff Wayne Booker was stopped driving a car by Defendant Officer Brian Reynolds in Philadelphia, Pennsylvania.

264.   Defendant Officer Brian Reynolds seized $1,500.00 from Wayne Booker and did not report the seizure of the money.

265.   Defendant Officer Brian Reynolds took Wayne Booker to his resident at 3425 Reach Street and unlawfully entered and searched Plaintiff Wayne Booker's residence.

266.   Defendant Officer falsely alleged that Wayne Booker was engaged in illegal activity.

267.   Defendant Officer Reynolds then planted drugs inside the residence at 3425 Reach Street and alleged that they belonged to Plaintiff Wayne Booker.

268.   Wayne Booker, who had not violated any laws of the Commonwealth of Pennsylvania or any other jurisdiction, was arrested and transported to a police district where he was arraigned on the following charges:

a.  Manufacture, delivery, or possession with intent to manufacture or deliver a controlled substance, pursuant to 35 P.S. §780-113; and

b.  Intentional possession of controlled substance 35 P.S. §780-113.

269.   Defendant Officer prepared and caused to be prepared police paperwork misrepresenting the events that led to the arrest of the Plaintiff Wayne Booker for the incident described in this complaint.

46

270.   Defendant Officer Reynolds was aware of exculpatory information about the Plaintiff Wayne Booker.

271.   The exculpatory information known to police that was not provided to Wayne Booker included the real facts and circumstances of the incident.

272.   Defendant Officer misrepresented the events that led to the arrest of Wayne Booker, and the misrepresentations were intentional, malicious, in bad faith, recklessly indifferent and deliberately indifferent to Wayne Booker's rights.

273.   Private counsel represented Wayne Booker in his criminal proceeding.

274.   After a preliminary hearing, Wayne Booker's case was held over for trial, and he pled guilty to possession with intent to manufacture or deliver a controlled substance.

275.   Wayne Booker was sentenced to eleven and a half to twenty three months confinement and $3,977.59 in fines and court fees.

276.   As a result of Defendant Officer Walker's activities as described above and his subsequent termination, Wayne Booker's criminal case was *nolle prossed* by the Philadelphia District Attorney's Office on January 9, 2015.

277.   Plaintiff was damaged and injured as set forth above under 42 U.S.C. §1983 by Defendant Officer, in that he, as described in detail in preceding paragraphs, violated Plaintiff's constitutional rights while acting under color of law.

278.   More specifically, Defendant Officer Reynolds seized and arrested Wayne Booker, and instituted criminal proceedings against Wayne Booker without probable cause and with malice.

279.   The criminal proceedings were terminated in favor of Wayne Booker.

47

280.    The conduct of Defendant Officer was the direct and proximate cause of Plaintiff Wayne Booker's harm.

WHEREFORE, Plaintiff Wayne Booker demands judgment against Defendant Officer Brian Reynolds in the amount of all damages, including compensatory damages and punitive damages, plus interest, injunctive relief, such other relief as appears reasonable and just, as well as reasonable attorney fees and costs under 42 U.S.C. §1988.

## COUNT XX
### Plaintiff Wayne Booker
### Supplemental State Law Claim
### Against Defendant Officer Brian Reynolds
### *Malicious Prosecution*

281.    All preceding paragraphs are fully incorporated herein by specific reference as though fully set forth.

282.    Plaintiff Wayne Booker was damaged and injured as set forth above by Defendant Officer Brian Reynolds in that he intentionally and unlawfully instituted criminal proceedings against Plaintiff Wayne Booker without probable cause and with malice.

283.    The criminal proceedings were terminated in favor of Wayne Booker.

284.    The conduct of Defendant Officer Brian Reynolds was the direct and proximate cause of Plaintiff's harm.

WHEREFORE, Plaintiff Wayne Booker demands judgment against Defendant Officer Brian Reynolds in the amount of all damages, including compensatory damages and punitive damages, plus interest, injunctive relief, such other relief as appears reasonable and just.

**COUNT XXI**
**Plaintiff Wayne Booker**
**42 U.S.C. § 1983**
**Against Defendant City of Philadelphia**

285.   All preceding paragraphs are fully incorporated herein by specific reference as though fully set forth.

286.   Plaintiff Wayne Booker was damaged and injured as set forth above under 42 U.S.C. §1983 by Defendant City of Philadelphia in that its Police Officers, as described in detail in preceding paragraphs, engaged in police misconduct in violation of Plaintiff's constitutional rights while acting under color of law.

287.   Prior to September 16, 2008, Defendant City of Philadelphia developed and maintained policies and/or customs of police misconduct exhibiting deliberate indifference to the constitutional rights of persons in the City of Philadelphia, which caused the violation of Plaintiff's rights.

288.   It was the policy and/or custom of Defendant Police Officers to engage while on-duty in criminal conduct, including but not limited to official oppression, perjury, false swearing, unsworn falsification to authorities, false incrimination of others, fictitious reports, tampering with or fabricating physical evidence, tampering with public records or information, intimidation of witnesses or victims, retaliation against witnesses or victims, falsification of police documents, obstruction of administration of law, robbery, theft by unlawful taking, theft by extortion, theft by deception, theft from a motor vehicle, receiving stolen property, illegal searches, unlawful restraint, kidnapping, false imprisonment, criminal coercion, illegal asset forfeiture, excessive use of force, assault and battery, harassment, and criminal conspiracy.

289.   It was the policy and/or custom of Defendant City of Philadelphia to

49

insufficiently supervise, train and/or re-train, and/or discipline against the police misconduct set forth in this Complaint.

290.    It was the policy and/or custom of Defendant City of Philadelphia to inadequately supervise, train, and discipline its Police Officers, including the Defendant Police Officers, against a code of silence or "blue code" of Police Officers refusing to intervene against or provide truthful information against constitutional violations and other unlawful misconduct committed by their fellow Police Officers.

291.    The present and past Philadelphia Police Commissioners and Deputy Commissioners with policy-making authority had actual knowledge and/or constructive knowledge of the policies and customs of Philadelphia Police Department failing to sufficiently supervise, train and/or re-train, and discipline against the police misconduct set forth in this Complaint.

292.    As a result of the above-described policies and customs and/or the lack thereof, Police Officers of the City of Philadelphia, including the Defendant Police Officers, believed that their actions would not be properly monitored by supervisory Officers and that misconduct would not be investigated or sanctioned, but would be tolerated.

WHEREFORE, Plaintiff Wayne Booker demands judgment against Defendant City of Philadelphia in the amount of all damages, including compensatory damages and punitive damages, plus interest, injunctive relief, such other relief as appears reasonable and just, as well as reasonable attorney fees and costs under 42 U.S.C. §1988.

### COUNT XXII
### Plaintiff Jacqueline Kingwood

### 42 U.S.C. § 1983
### Against Defendant Officer Thomas Liciardello
### *Malicious Prosecution*

293.  All preceding paragraphs are fully incorporated herein by specific reference as though fully set forth.

294.   On or about June 1, 2009, Plaintiff Jacqueline Kingwood was present in her residence at 6237 Langdon Street in Philadelphia, Pennsylvania.

295.   On or about the same time Defendant Officer Thomas Liciardello performed surveillance of the above-mentioned residence located on the 6000 block of Langdon Street in Philadelphia, Pennsylvania.

296.  On or about the same time, Defendant Officer Thomas Liciardello unlawfully entered Plaintiff Jacqueline Kingwood's residence.

297.   Defendant Officer falsely alleged that Jacqueline Kingwood was engaged in illegal activity.

298.   Defendant Officer Liciardello then planted drugs inside the residence at 6237 Langdon Street and alleged that they belonged to Plaintiff Jacqueline Kingwood.

299.   Jacqueline Kingwood, who had not violated any laws of the Commonwealth of Pennsylvania or any other jurisdiction, was arrested and transported to a police district where he was arraigned on the following charges:

a.  Manufacture, delivery, or possession with intent to manufacture or deliver a controlled substance, pursuant to 35 P.S. §780-113;

b.  Criminal conspiracy engaging- Manufacture, delivery, or possession with intent to manufacture or deliver a controlled substance, pursuant to 18 P.S. §903;

51

      c.  Intentional possession of controlled substance by person not registered; and

      d.  Use/ possession of drug paraphernalia, pursuant to 35 P.S. §780-113.

300.   Defendant Officers prepared and caused to be prepared police paperwork misrepresenting the events that led to the arrest of the Plaintiff Jacqueline Kingwood for the incident described in this complaint.

301.   Defendant Officers were aware of exculpatory information about the Plaintiff Jacqueline Kingwood.

302.   The exculpatory information known to police that was not provided to Jacqueline Kingwood included the real facts and circumstances of the incident.

303.   Defendant Officers misrepresented the events that led to the arrest of Jacqueline Kingwood, and the misrepresentations were intentional, malicious, in bad faith, recklessly indifferent and deliberately indifferent to Jacqueline Kingwood's rights.

304.   Private counsel represented Jacqueline Kingwood in her criminal proceeding.

305.   After a preliminary hearing, Jacqueline Kingwood's case was held over for trial, and she pled guilty to possession with intent to manufacture or deliver a controlled substance, criminal conspiracy and possession of a controlled substance.

306.   Jacqueline Kingwood was sentenced to twelve months probation and was assessed $1,443.50 in fines and court costs.

307.   As a result of Defendant Officer Walker's activities as described above and his subsequent termination, Jacqueline Kingwood's criminal case was *nolle prossed* by the Philadelphia District Attorney's Office on January 9, 2015.

308.    Plaintiff was damaged and injured as set forth above under 42 U.S.C. §1983 by Defendant Officer, in that he, as described in detail in preceding paragraphs, violated Plaintiff's constitutional rights while acting under color of law.

309.    More specifically, Defendant Officer seized and arrested Jacqueline Kingwood, and instituted criminal proceedings against Jacqueline Kingwood without probable cause and with malice.

310.    The criminal proceedings were terminated in favor of Jacqueline Kingwood.

311.    The conduct of Defendant Officer was the direct and proximate cause of Plaintiff Jacqueline Kingwood's harm.

WHEREFORE, Plaintiff Jacqueline Kingwood demands judgment against Defendant Officer Thomas Liciardello in the amount of all damages, including compensatory damages and punitive damages, plus interest, injunctive relief, such other relief as appears reasonable and just, as well as reasonable attorney fees and costs under 42 U.S.C. §1988.

**COUNT XXIII**
**Plaintiff Jacqueline Kingwood**
**Supplemental State Law Claim**
**Against Defendant Officer Thomas Liciardello**
*Malicious Prosecution*

312.    All preceding paragraphs are fully incorporated herein by specific reference as though fully set forth.

313.    Plaintiff Jacqueline Kingwood was damaged and injured as set forth above by Defendant Officer Thomas Liciardello in that he intentionally and unlawfully instituted

criminal proceedings against Plaintiff Jacqueline Kingwood without probable cause and with malice.

314.   The criminal proceedings were terminated in favor of Jacqueline Kingwood.

315.   The conduct of Defendant Officer Thomas Liciardello was the direct and proximate cause of Plaintiff's harm.

WHEREFORE, Plaintiff Jacqueline Kingwood demands judgment against Defendant Officer Thomas Liciardello in the amount of all damages, including compensatory damages and punitive damages, plus interest, injunctive relief, such other relief as appears reasonable and just.

### COUNT XXIV
### Plaintiff Jacqueline Kingwood
### 42 U.S.C. § 1983
### Against Defendant City of Philadelphia

316.   All preceding paragraphs are fully incorporated herein by specific reference as though fully set forth.

317.   Plaintiff Jacqueline Kingwood was damaged and injured as set forth above under 42 U.S.C. §1983 by Defendant City of Philadelphia in that its Police Officers, as described in detail in preceding paragraphs, engaged in police misconduct in violation of Plaintiff's constitutional rights while acting under color of law.

318.   Prior to June 1, 2009, Defendant City of Philadelphia developed and maintained policies and/or customs of police misconduct exhibiting deliberate indifference to the constitutional rights of persons in the City of Philadelphia, which caused the violation of Plaintiff's rights.

319.   It was the policy and/or custom of Defendant Police Officers to engage

54

while on-duty in criminal conduct, including but not limited to official oppression, perjury, false swearing, unsworn falsification to authorities, false incrimination of others, fictitious reports, tampering with or fabricating physical evidence, tampering with public records or information, intimidation of witnesses or victims, retaliation against witnesses or victims, falsification of police documents, obstruction of administration of law, robbery, theft by unlawful taking, theft by extortion, theft by deception, theft from a motor vehicle, receiving stolen property, illegal searches, unlawful restraint, kidnapping, false imprisonment, criminal coercion, illegal asset forfeiture, excessive use of force, assault and battery, harassment, and criminal conspiracy.

320.    It was the policy and/or custom of Defendant City of Philadelphia to insufficiently supervise, train and/or re-train, and/or discipline against the police misconduct set forth in this Complaint.

321.    It was the policy and/or custom of Defendant City of Philadelphia to inadequately supervise, train, and discipline its Police Officers, including the Defendant Police Officers, against a code of silence or "blue code" of Police Officers refusing to intervene against or provide truthful information against constitutional violations and other unlawful misconduct committed by their fellow Police Officers.

322.    The present and past Philadelphia Police Commissioners and Deputy Commissioners with policy-making authority had actual knowledge and/or constructive knowledge of the policies and customs of Philadelphia Police Department failing to sufficiently supervise, train and/or re-train, and discipline against the police misconduct set forth in this Complaint.

323.    As a result of the above-described policies and customs and/or the lack thereof, Police Officers of the City of Philadelphia, including the Defendant Police Officers, believed that their actions would not be properly monitored by supervisory Officers and that misconduct would not be investigated or sanctioned, but would be tolerated.

WHEREFORE, Plaintiff Jacqueline Kingwood demands judgment against Defendant City of Philadelphia in the amount of all damages, including compensatory damages and punitive damages, plus interest, injunctive relief, such other relief as appears reasonable and just, as well as reasonable attorney fees and costs under 42 U.S.C. §1988.

## COUNT XXV
### Plaintiff Shelita Braxton
### 42 U.S.C. § 1983
### Against Defendant Officer Perry Betts
### *Malicious Prosecution*

324.    On or about February 1, 1010, Plaintiff Shelita Braxton was present in a neighborhood in Philadelphia, Pennsylvania.

325.    On or about the same time Defendant Officer Perry Betts was present in the same neighborhood in Philadelphia, Pennsylvania.

326.    Defendant Officer Betts falsely alleged that Shelita Braxton was engaged in illegal activity.

327.    Defendant Officer Betts then planted drugs on the person of Shelita Braxton and alleged that they belonged to Shelita Braxton.

328.   Shelita Braxton, who had not violated any laws of the Commonwealth of Pennsylvania or any other jurisdiction, was arrested and transported to a police district where she was arraigned on the following charges:

a.  Intentional possession of controlled substance, pursuant to 35 P.S. §780-113; and

b.  Possession of marijuana, pursuant to 35 P.S. §780-113.

329.   Defendant Officer Betts prepared and caused to be prepared police paperwork misrepresenting the events that led to the arrest of Shelita Braxton for the incident described in this complaint.

330.   Defendant Officer Betts was aware of exculpatory information about the arrest of Shelita Braxton.

331.   The exculpatory information known to police that was not provided to Shelita Braxton included the real facts and circumstances of the incident.

332.   Defendant Officer Betts misrepresented the events that led to the arrest of Shelita Braxton, and the misrepresentations were intentional, malicious, in bad faith, recklessly indifferent and deliberately indifferent to Shelita Braxton's rights.

333.   The Defender Association of Philadelphia represented Shelita Braxton in her criminal proceeding.

334.   Shelita Braxton was found guilty of possession of marijuana.

335.   Shelita Braxton was sentenced to no further penalty and $231.91 in fines and court fees.

336.   As a result of Defendant Officer Walker's activities as described above and his subsequent termination, Shelita Braxton's criminal case was *nolle prossed* by

the Philadelphia District Attorney's Office on March 6, 2015.

337.   Plaintiff was damaged and injured as set forth above under 42 U.S.C. §1983 by Defendant Officer Betts, in that he, as described in detail in preceding paragraphs, violated Plaintiff's constitutional rights while acting under color of law.

338.   More specifically, Defendant Officer Betts seized and arrested Shelita Braxton, and instituted criminal proceedings against Shelita Braxton without probable cause and with malice.

339.   The criminal proceedings were terminated in favor of Shelita Braxton.

340.   The conduct of Defendant Officer Betts was the direct and proximate cause of Shelita Braxton's harm.

WHEREFORE, Plaintiff Shelita Braxton demands judgment against Defendant Officer Perry Betts in the amount of all damages, including compensatory damages and punitive damages, plus interest, injunctive relief, such other relief as appears reasonable and just, as well as reasonable attorney fees and costs under 42 U.S.C. §1988.

### COUNT XXVI
### Plaintiff Shelita Braxton
### Supplemental State Law Claim
### Against Defendant Officer Perry Betts
### *Malicious Prosecution*

341.   All preceding paragraphs are fully incorporated herein by specific reference as though fully set forth.

342.   Plaintiff Shelita Braxton was damaged and injured as set forth above by Defendant Officer in that he intentionally and unlawfully instituted criminal proceedings against Plaintiff Shelita Braxton without probable cause and with malice.

58

343.    The criminal proceedings were terminated in favor of Shelita Braxton.

344.    The conduct of Defendant Officer Perry Betts was the direct and

proximate cause of Plaintiff's harm.

WHEREFORE, Plaintiff Shelita Braxton demands judgment against Defendant Officer

Perry Betts in the amount of all damages, including compensatory damages and

punitive damages, plus interest, injunctive relief, such other relief as appears

reasonable and just.

### COUNT XXVII
### Plaintiff Shelita Braxton
### 42 U.S.C. § 1983
### Against Defendant City of Philadelphia

345.    All preceding paragraphs are fully incorporated herein by specific

reference as though fully set forth.

346.    Plaintiff Shelita Braxton was damaged and injured as set forth above

under 42 U.S.C. §1983 by Defendant City of Philadelphia in that its Police Officers, as

described in detail in preceding paragraphs, engaged in police misconduct in violation of

Plaintiff's constitutional rights while acting under color of law.

347.    Prior to February 1, 2010, Defendant City of Philadelphia developed and

maintained policies and/or customs of police misconduct exhibiting deliberate

indifference to the constitutional rights of persons in the City of Philadelphia, which

caused the violation of Plaintiff's rights.

348.    It was the policy and/or custom of Defendant Police Officers to engage

while on-duty in criminal conduct, including but not limited to official oppression, perjury,

false swearing, unsworn falsification to authorities, false incrimination of others, fictitious

reports, tampering with or fabricating physical evidence, tampering with public records

59

or information, intimidation of witnesses or victims, retaliation against witnesses or victims, falsification of police documents, obstruction of administration of law, robbery, theft by unlawful taking, theft by extortion, theft by deception, theft from a motor vehicle, receiving stolen property, illegal searches, unlawful restraint, kidnapping, false imprisonment, criminal coercion, illegal asset forfeiture, excessive use of force, assault and battery, harassment, and criminal conspiracy.

349.    It was the policy and/or custom of Defendant City of Philadelphia to insufficiently supervise, train and/or re-train, and/or discipline against the police misconduct set forth in this Complaint.

350.    It was the policy and/or custom of Defendant City of Philadelphia to inadequately supervise, train, and discipline its Police Officers, including the Defendant Police Officers, against a code of silence or "blue code" of Police Officers refusing to intervene against or provide truthful information against constitutional violations and other unlawful misconduct committed by their fellow Police Officers.

351.    The present and past Philadelphia Police Commissioners and Deputy Commissioners with policy-making authority had actual knowledge and/or constructive knowledge of the policies and customs of Philadelphia Police Department failing to sufficiently supervise, train and/or re-train, and discipline against the police misconduct set forth in this Complaint.

352.    As a result of the above-described policies and customs and/or the lack thereof, Police Officers of the City of Philadelphia, including the Defendant Police Officers, believed that their actions would not be properly monitored by supervisory

Officers and that misconduct would not be investigated or sanctioned, but would be tolerated.

WHEREFORE, Plaintiff Shelita Braxton demands judgment against Defendant City of Philadelphia in the amount of all damages, including compensatory damages and punitive damages, plus interest, injunctive relief, such other relief as appears reasonable and just, as well as reasonable attorney fees and costs under 42 U.S.C. §1988.

### COUNT XXVIII
### Plaintiff Paul Jackson
### 42 U.S.C. § 1983
### Against Defendant Officer Thomas Liciardello
### *Malicious Prosecution*

353.   All preceding paragraphs are fully incorporated herein by specific reference as though fully set forth.

354.   On or about April 15, 2010, Plaintiff Paul Jackson was present in a neighborhood in Philadelphia, Pennsylvania.

355.   On or about the same time Defendant Officer Thomas Liciardello was in the same neighborhood in Philadelphia, Pennsylvania.

356.   Defendant Officer falsely alleged that Paul Jackson was engaged in illegal activity.

357.   Defendant Officer Liciardello then planted drugs on the person of Paul Jackson and alleged that they belonged to Plaintiff Paul Jackson.

358.   Paul Jackson, who had not violated any laws of the Commonwealth of Pennsylvania or any other jurisdiction, was arrested and transported to a police district where he was arraigned on the following charges:

a.  Manufacture, delivery, or possession with intent to manufacture or deliver a controlled substance, pursuant to 35 P.S. §780-113;

b.  Criminal use of a communication facility, pursuant to 18 P.S. §7512;

c.  Intentional possession of controlled substance, pursuant to 35 P.S. §780-113;

d.  Use/ possession of drug paraphernalia, pursuant to 35 P.S. §780-113; and

e.  Possession of an instrument of crime, pursuant to 18 P.S. §907.

359.    Defendant Officer prepared and caused to be prepared police paperwork misrepresenting the events that led to the arrest of the Plaintiff Paul Jackson for the incident described in this complaint.

360.    Defendant Officer was aware of exculpatory information about the Plaintiff Paul Jackson.

361.    The exculpatory information known to police that was not provided to Paul Jackson included the real facts and circumstances of the incident.

362.    Defendant Officer misrepresented the events that led to the arrest of Paul Jackson, and the misrepresentations were intentional, malicious, in bad faith, recklessly indifferent and deliberately indifferent to Paul Jackson's rights.

363.    Private counsel represented Paul Jackson in her criminal proceeding.

364.    After a preliminary hearing, Paul Jackson's case was held over for trial, and he pled guilty to possession with intent to manufacture or deliver a controlled substance and possession of an instrument of crime.

62

365.    Paul Jackson was sentenced to eleven and a half months to twenty-three months incarceration, three years probation and was assessed $4,501.44 in fines and court costs.

366.    As a result of Defendant Officer Walker's activities as described above and his subsequent termination, Paul Jackson's criminal case was *nolle prossed* by the Philadelphia District Attorney's Office on January 9, 2015.

367.    Plaintiff was damaged and injured as set forth above under 42 U.S.C. §1983 by Defendant Officer, in that he, as described in detail in preceding paragraphs, violated Plaintiff's constitutional rights while acting under color of law.

368.    More specifically, Defendant Officer seized and arrested Paul Jackson, and instituted criminal proceedings against Paul Jackson without probable cause and with malice.

369.    The criminal proceedings were terminated in favor of Paul Jackson.

370.    The conduct of Defendant Officer was the direct and proximate cause of Plaintiff Paul Jackson's harm.

WHEREFORE, Plaintiff Paul Jackson demands judgment against Defendant Officer Thomas Liciardello in the amount of all damages, including compensatory damages and punitive damages, plus interest, injunctive relief, such other relief as appears reasonable and just, as well as reasonable attorney fees and costs under 42 U.S.C. §1988.

**COUNT XXIX**
**Plaintiff Paul Jackson**
**Supplemental State Law Claim**
**Against Defendant Officer Thomas Liciardello**
***Malicious Prosecution***

371.    All preceding paragraphs are fully incorporated herein by specific reference as though fully set forth.

372.    Plaintiff Paul Jackson was damaged and injured as set forth above by Defendant Officer Thomas Liciardello in that they intentionally and unlawfully instituted criminal proceedings against Plaintiff Paul Jackson without probable cause and with malice.

373.    The criminal proceedings were terminated in favor of Paul Jackson.

374.    The conduct of Defendant Officer Thomas Liciardello was the direct and proximate cause of Plaintiff's harm.

WHEREFORE, Plaintiff Paul Jackson demands judgment against Defendant Officer Thomas Liciardello in the amount of all damages, including compensatory damages and punitive damages, plus interest, injunctive relief, such other relief as appears reasonable and just.

### COUNT XXX
### Plaintiff Paul Jackson
### 42 U.S.C. § 1983
### Against Defendant City of Philadelphia

375.    All preceding paragraphs are fully incorporated herein by specific reference as though fully set forth.

376.    Plaintiff Paul Jackson was damaged and injured as set forth above under 42 U.S.C. §1983 by Defendant City of Philadelphia in that its Police Officers, as described in detail in preceding paragraphs, engaged in police misconduct in violation of Plaintiff's constitutional rights while acting under color of law.

377.    Prior to April 15, 2010, Defendant City of Philadelphia developed and maintained policies and/or customs of police misconduct exhibiting deliberate

indifference to the constitutional rights of persons in the City of Philadelphia, which caused the violation of Plaintiff's rights.

378.   It was the policy and/or custom of Defendant Police Officers to engage while on-duty in criminal conduct, including but not limited to official oppression, perjury, false swearing, unsworn falsification to authorities, false incrimination of others, fictitious reports, tampering with or fabricating physical evidence, tampering with public records or information, intimidation of witnesses or victims, retaliation against witnesses or victims, falsification of police documents, obstruction of administration of law, robbery, theft by unlawful taking, theft by extortion, theft by deception, theft from a motor vehicle, receiving stolen property, illegal searches, unlawful restraint, kidnapping, false imprisonment, criminal coercion, illegal asset forfeiture, excessive use of force, assault and battery, harassment, and criminal conspiracy.

379.   It was the policy and/or custom of Defendant City of Philadelphia to insufficiently supervise, train and/or re-train, and/or discipline against the police misconduct set forth in this Complaint.

380.   It was the policy and/or custom of Defendant City of Philadelphia to inadequately supervise, train, and discipline its Police Officers, including the Defendant Police Officers, against a code of silence or "blue code" of Police Officers refusing to intervene against or provide truthful information against constitutional violations and other unlawful misconduct committed by their fellow Police Officers.

381.   The present and past Philadelphia Police Commissioners and Deputy Commissioners with policy-making authority had actual knowledge and/or constructive knowledge of the policies and customs of Philadelphia Police Department failing to

sufficiently supervise, train and/or re-train, and discipline against the police misconduct set forth in this Complaint.

382.    As a result of the above-described policies and customs and/or the lack thereof, Police Officers of the City of Philadelphia, including the Defendant Police Officers, believed that their actions would not be properly monitored by supervisory Officers and that misconduct would not be investigated or sanctioned, but would be tolerated.

WHEREFORE, Plaintiff Paul Jackson demands judgment against Defendant City of Philadelphia in the amount of all damages, including compensatory damages and punitive damages, plus interest, injunctive relief, such other relief as appears reasonable and just, as well as reasonable attorney fees and costs under 42 U.S.C. §1988.

**COUNT XXXI**
**Plaintiff Rahmeak Taylor**
**42 U.S.C. § 1983**
**Against Defendant Officer Brian Reynolds**
***Malicious Prosecution***

383.    All preceding paragraphs are fully incorporated herein by specific reference as though fully set forth.

384.    On or about April 22, 2010, Plaintiff Rahmeak Taylor was sitting in front of his house in Philadelphia, Pennsylvania, when he was unlawfully stopped and searched by Defendant Officer Brian Reynolds.

385.    Defendant Officer falsely alleged that Rahmeak Taylor was engaged in illegal activity.

386.    Defendant Officer Reynolds then planted drugs on the person of Rahmeak Taylor and alleged that they belonged to Plaintiff Rahmeak Taylor.

387.    Rahmeak Taylor, who had not violated any laws of the Commonwealth of Pennsylvania or any other jurisdiction, was arrested and transported to a police district where he was arraigned on the following charges:

        a.  Manufacture, delivery, or possession with intent to manufacture or deliver a controlled substance, pursuant to 35 P.S. §780-113; and

        b.  Intentional possession of controlled substance 35 P.S. §780-113.

388.    Defendant Officer prepared and caused to be prepared police paperwork misrepresenting the events that led to the arrest of the Plaintiff Rahmeak Taylor for the incident described in this complaint.

389.    Defendant Officer Reynolds was aware of exculpatory information about the Plaintiff Rahmeak Taylor.

390.    The exculpatory information known to police that was not provided to Rahmeak Taylor included the real facts and circumstances of the incident.

391.    Defendant Officer misrepresented the events that led to the arrest of Rahmeak Taylor, and the misrepresentations were intentional, malicious, in bad faith, recklessly indifferent and deliberately indifferent to Rahmeak Taylor's rights.

392.    The Defender Association of Philadelphia represented Rahmeak Taylor in his criminal proceeding.

393.    After a preliminary hearing, Rahmeak Taylor's case was held over for trial, and he pled guilty to possession with intent to manufacture or deliver a controlled substance.

394.   Rahmeak Taylor was sentenced to one to two years confinement and $93.94 in fines and court fees.

395.   As a result of Defendant Officer Walker's activities as described above and his subsequent termination, Rahmeak Taylor's criminal case was *nolle prossed* by the Philadelphia District Attorney's Office on January 9, 2015.

396.   Plaintiff was damaged and injured as set forth above under 42 U.S.C. §1983 by Defendant Officer, in that he, as described in detail in preceding paragraphs, violated Plaintiff's constitutional rights while acting under color of law.

397.   More specifically, Defendant Officer Reynolds seized and arrested Rahmeak Taylor, and instituted criminal proceedings against Rahmeak Taylor without probable cause and with malice.

398.   The criminal proceedings were terminated in favor of Rahmeak Taylor.

399.   The conduct of Defendant Officer was the direct and proximate cause of Plaintiff Rahmeak Taylor's harm.

WHEREFORE, Plaintiff Rahmeak Taylor demands judgment against Defendant Officer Brian Reynolds in the amount of all damages, including compensatory damages and punitive damages, plus interest, injunctive relief, such other relief as appears reasonable and just, as well as reasonable attorney fees and costs under 42 U.S.C. §1988.

**COUNT XXXII**
**Plaintiff Rahmeak Taylor**
**Supplemental State Law Claim**
**Against Defendant Officer Brian Reynolds**
***Malicious Prosecution***

68

400.    All preceding paragraphs are fully incorporated herein by specific

reference as though fully set forth.

401.    Plaintiff Rahmeak Taylor was damaged and injured as set forth above by

Defendant Officer Brian Reynolds in that he intentionally and unlawfully instituted

criminal proceedings against Plaintiff Rahmeak Taylor without probable cause and with

malice.

402.    The criminal proceedings were terminated in favor of Rahmeak Taylor.

403.    The conduct of Defendant Officer Brian Reynolds was the direct and

proximate cause of Plaintiff's harm.

WHEREFORE, Plaintiff Rahmeak Taylor demands judgment against Defendant Officer

Brian Reynolds in the amount of all damages, including compensatory damages and

punitive damages, plus interest, injunctive relief, such other relief as appears

reasonable and just.

### COUNT XXXIII
### Plaintiff Rahmeak Taylor
### 42 U.S.C. § 1983
### Against Defendant City of Philadelphia

404.    All preceding paragraphs are fully incorporated herein by specific

reference as though fully set forth.

405.    Plaintiff Rahmeak Taylor was damaged and injured as set forth above

under 42 U.S.C. §1983 by Defendant City of Philadelphia in that its Police Officers, as

described in detail in preceding paragraphs, engaged in police misconduct in violation of

Plaintiff's constitutional rights while acting under color of law.

406.    Prior to April 22, 2010, Defendant City of Philadelphia developed and

maintained policies and/or customs of police misconduct exhibiting deliberate

indifference to the constitutional rights of persons in the City of Philadelphia, which caused the violation of Plaintiff's rights.

407.   It was the policy and/or custom of Defendant Police Officers to engage while on-duty in criminal conduct, including but not limited to official oppression, perjury, false swearing, unsworn falsification to authorities, false incrimination of others, fictitious reports, tampering with or fabricating physical evidence, tampering with public records or information, intimidation of witnesses or victims, retaliation against witnesses or victims, falsification of police documents, obstruction of administration of law, robbery, theft by unlawful taking, theft by extortion, theft by deception, theft from a motor vehicle, receiving stolen property, illegal searches, unlawful restraint, kidnapping, false imprisonment, criminal coercion, illegal asset forfeiture, excessive use of force, assault and battery, harassment, and criminal conspiracy.

408.   It was the policy and/or custom of Defendant City of Philadelphia to insufficiently supervise, train and/or re-train, and/or discipline against the police misconduct set forth in this Complaint.

409.   It was the policy and/or custom of Defendant City of Philadelphia to inadequately supervise, train, and discipline its Police Officers, including the Defendant Police Officers, against a code of silence or "blue code" of Police Officers refusing to intervene against or provide truthful information against constitutional violations and other unlawful misconduct committed by their fellow Police Officers.

410.   The present and past Philadelphia Police Commissioners and Deputy Commissioners with policy-making authority had actual knowledge and/or constructive knowledge of the policies and customs of Philadelphia Police Department failing to

70

sufficiently supervise, train and/or re-train, and discipline against the police misconduct set forth in this Complaint.

411.   As a result of the above-described policies and customs and/or the lack thereof, Police Officers of the City of Philadelphia, including the Defendant Police Officers, believed that their actions would not be properly monitored by supervisory Officers and that misconduct would not be investigated or sanctioned, but would be tolerated.

WHEREFORE, Plaintiff Rahmeak Taylor demands judgment against Defendant City of Philadelphia in the amount of all damages, including compensatory damages and punitive damages, plus interest, injunctive relief, such other relief as appears reasonable and just, as well as reasonable attorney fees and costs under 42 U.S.C. §1988.

### COUNT XXXIV
### Plaintiff Joshua Manneto
### 42 U.S.C. § 1983
### Against Defendant Officer Michael Spicer
### *Malicious Prosecution*

412.   All preceding paragraphs are fully incorporated herein by specific reference as though fully set forth.

413.   On or about March 14, 2011, Plaintiff Joshua Manneto was present in a neighborhood in Philadelphia, Pennsylvania.

414.   On or about the same time Defendant Officer Michael Spicer was present in the same above-mentioned neighborhood.

415.  Defendant Officer Michael Spicer approached and unlawfully stopped Joshua Manneto.

71

416.   Defendant Officer falsely alleged that Joshua Manneto was engaged in illegal activity.

417.   Defendant Officer then planted drugs on Joshua Manneto's person and alleged that they belonged to Joshua Manneto.

418.   Joshua Manneto, who had not violated any laws of the Commonwealth of Pennsylvania or any other jurisdiction, was arrested and transported to a police district where he was arraigned on the following charges:

a.  Manufacture, delivery, or possession with intent to manufacture or deliver a controlled substance, pursuant to 35 P.S. §780-113; and

b. Intentionally possessing controlled substance, pursuant to 35 P.S. §780-113.

419.   Defendant Officer prepared and caused to be prepared police paperwork misrepresenting the events that led to the arrest of the Plaintiff Joshua Manneto for the incident described in this complaint.

420.   Defendant Officer was aware of exculpatory information about the Plaintiff Joshua Manneto.

421.   The exculpatory information known to police that was not provided to Joshua Manneto included the real facts and circumstances of the incident.

422.   Defendant Officer misrepresented the events that led to the arrest of Joshua Manneto, and the misrepresentations were intentional, malicious, in bad faith, recklessly indifferent and deliberately indifferent to Joshua Manneto's rights.

423.   The Defender Association of Philadelphia represented Joshua Manneto in his criminal proceeding.

424.   After a preliminary hearing, Joshua Manneto's case was held over for trial, and after a trial he pled guilty to possession with intent to manufacture or deliver a controlled substance.

425.   Joshua Manneto was sentenced to two years probation and $1,302.44 in fines and court fees.

426.   As a result of Defendant Officer Walker's activities as described above and his subsequent termination, Joshua Manneto's criminal case was *nolle prossed* by the Philadelphia District Attorney's Office on February 5, 2016.

427.   Plaintiff was damaged and injured as set forth above under 42 U.S.C. §1983 by Defendant Officer, in that they, as described in detail in preceding paragraphs, violated Plaintiff's constitutional rights while acting under color of law.

428.   More specifically, Defendant Officers seized and arrested Joshua Manneto, and instituted criminal proceedings against Joshua Manneto without probable cause and with malice.

429.   The criminal proceedings were terminated in favor of Joshua Manneto.

430.   The conduct of Defendant Officers was the direct and proximate cause of Plaintiff Joshua Manneto's harm.

WHEREFORE, Plaintiff Joshua Manneto demands judgment against Defendant Officer Michael Spicer in the amount of all damages, including compensatory damages and punitive damages, plus interest, injunctive relief, such other relief as appears reasonable and just, as well as reasonable attorney fees and costs under 42 U.S.C. §1988.

### COUNT XXXV
### Plaintiff Joshua Manneto

**Supplemental State Law Claim**
**Against Defendant Officer Michael Spicer**
***Malicious Prosecution***

431.    All preceding paragraphs are fully incorporated herein by specific reference as though fully set forth.

432.    Plaintiff Joshua Manneto was damaged and injured as set forth above by Defendant Officer Michael Spicer in that they intentionally and unlawfully instituted criminal proceedings against Plaintiff Joshua Manneto without probable cause and with malice.

433.    The criminal proceedings were terminated in favor of Joshua Manneto.

434.    The conduct of Defendant Officer Michael Spicer was the direct and proximate cause of Plaintiff's harm.

WHEREFORE, Plaintiff Joshua Manneto demands judgment against Defendant Officer Michael Spicer in the amount of all damages, including compensatory damages and punitive damages, plus interest, injunctive relief, such other relief as appears reasonable and just.

**COUNT XXXVI**
**Plaintiff Joshua Manneto**
**42 U.S.C. § 1983**
**Against Defendant City of Philadelphia**

435.    All preceding paragraphs are fully incorporated herein by specific reference as though fully set forth.

436.    Plaintiff Joshua Manneto was damaged and injured as set forth above under 42 U.S.C. §1983 by Defendant City of Philadelphia in that its Police Officers, as described in detail in preceding paragraphs, engaged in police misconduct in violation of Plaintiff's constitutional rights while acting under color of law.

74

437.   Prior to March 14, 2011, Defendant City of Philadelphia developed and maintained policies and/or customs of police misconduct exhibiting deliberate indifference to the constitutional rights of persons in the City of Philadelphia, which caused the violation of Plaintiff's rights.

438.   It was the policy and/or custom of Defendant Police Officers to engage while on-duty in criminal conduct, including but not limited to official oppression, perjury, false swearing, unsworn falsification to authorities, false incrimination of others, fictitious reports, tampering with or fabricating physical evidence, tampering with public records or information, intimidation of witnesses or victims, retaliation against witnesses or victims, falsification of police documents, obstruction of administration of law, robbery, theft by unlawful taking, theft by extortion, theft by deception, theft from a motor vehicle, receiving stolen property, illegal searches, unlawful restraint, kidnapping, false imprisonment, criminal coercion, illegal asset forfeiture, excessive use of force, assault and battery, harassment, and criminal conspiracy.

439.   It was the policy and/or custom of Defendant City of Philadelphia to insufficiently supervise, train and/or re-train, and/or discipline against the police misconduct set forth in this Complaint.

440.   It was the policy and/or custom of Defendant City of Philadelphia to inadequately supervise, train, and discipline its Police Officers, including the Defendant Police Officers, against a code of silence or "blue code" of Police Officers refusing to intervene against or provide truthful information against constitutional violations and other unlawful misconduct committed by their fellow Police Officers.

441.   The present and past Philadelphia Police Commissioners and Deputy

Commissioners with policy-making authority had actual knowledge and/or constructive knowledge of the policies and customs of Philadelphia Police Department failing to sufficiently supervise, train and/or re-train, and discipline against the police misconduct set forth in this Complaint.

442. As a result of the above-described policies and customs and/or the lack thereof, Police Officers of the City of Philadelphia, including the Defendant Police Officers, believed that their actions would not be properly monitored by supervisory Officers and that misconduct would not be investigated or sanctioned, but would be tolerated.

WHEREFORE, Plaintiff Joshua Manneto demands judgment against Defendant City of Philadelphia in the amount of all damages, including compensatory damages and punitive damages, plus interest, injunctive relief, such other relief as appears reasonable and just, as well as reasonable attorney fees and costs under 42 U.S.C. §1988.

Respectfully submitted,

Eric F. Spade, Esquire
THE SPADE LAW FIRM, LLC
One South Broad Street, Suite 1830
Philadelphia, PA  19107
(215) 772-0600
espade@gmail.com

JOHN M. WILLIS, ESQUIRE
1515 Market Street, Suite 1510
Philadelphia, PA  19102
(215) 498-1000

Val Pleet Wilson, Esquire

76

WILSON & JOHNSON
One South Broad Street, Suite 1830
Philadelphia, PA  19107
(215) 988-9277

**Counsel for Plaintiffs**